**Reginald Eugene MORRIS, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0240–07.**

Court of Criminal Appeals of Texas.

Nov. 18, 2009.

Rehearing Denied Feb. 3, 2010.

adults and a baby. A jury convicted appellant of three counts of intoxication manslaughter. The court of appeals found that the competency jury's verdict that appellant, who claimed amnesia concerning the boat accident, was competent to stand trial was not against the great weight and preponderance of the evidence.[1] We granted both appellant's and the State's petitions for discretionary review to 1) revisit *Jackson v. State,* a prior opinion addressing the relevance of amnesia to a claim of incompetency, and 2) address the appropriate remedy for an unlawful, partially stacked sentence.[2] We affirm the court of appeals.

## I.

Stanley G. Schneider, Houston, TX, for appellant.

Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, TX, Jeffrey L. VanHorn, State's Attorney, Austin, TX, for State.

### OPINION

COCHRAN, J., delivered the opinion of the Court, in which WOMACK, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Appellant's high-speed boat collided with a cabin cruiser on Lake Conroe, killing two

### A. The accident.

On July 17, 1999, appellant and Gary Carlin spent the day drinking and boating on Lake Conroe in appellant's 23–foot Wellcraft speedboat. Douglas Cox, who was also out boating that day, ran into appellant at a lakeside bar in the late afternoon. Later, they drove their boats over to the Del Lago Marina to continue drinking. Sometime after 9:00 p.m., the three men walked down to the boat dock. As Cox drove his boat off, he glanced back and saw a bright spotlight coming from

---

1. *Morris v. State,* 214 S.W.3d 159 (Tex.App.-Beaumont 2007).

2. Appellant's issues are

(1) The court of appeals erred in reforming the trial court's stacking order rather than vacating it in its entirety, and

(2) The court of appeals decision concerning appellant's competency to stand trial conflicts with this court's decisions in *Jackson v. State,* 548 S.W.2d 685 (Tex.Crim.App. 1977), *Casey v. State,* 924 S.W.2d 946 (Tex. Crim.App.1996) and *Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990).

The State's issues are

(1) Should *Jackson v. State,* 548 S.W.2d 685 (Tex.Crim.App.1977), be overruled in part because the review of the sufficiency of the evidence in support of a competency jury's verdict should be restricted to the evidence before the jury?, and

(2) If a trial court pronounces a legal alternative ruling on the cumulation of sentences, should a court of appeals reform the judgment contrary to that ruling? In other words, should *Ex parte Sadler,* 162 Tex. Crim. 170, 283 S.W.2d 235 (1955), be overruled with respect to its automatic reformation of a judgment to strike the erroneous cumulation order and run the sentences concurrently?

appellant's Wellcraft, shining up at the marina hotel.

Brian Ross also saw the spotlight. Ross recognized the Wellcraft because he had worked on it before. He said that the light was being held by the driver who was the taller and thinner of the two men on the boat.[3] Ross said that the driver yelled out that they were "just looking for some pussy." The driver revved the engine, idled out of the marina, and then the boat "took off at a very high RPM, very fast, what I would consider fast throttle."

Tim Treemer, who was fishing on the lakeshore, said that he could hear a boat traveling from Del Lago to the main body of the lake "at a high rate of speed ... over 70 miles an hour." Treemer noted the boat did not have its aft lights up. He told his fishing partners, "he's going to hit somebody or kill somebody." Treemer lost sight of the boat, but he shortly heard a violent collision—fiberglass on fiberglass. Treemer called 911.

Dennis Norman, who was fishing from his 28-foot pontoon boat, likewise heard the accident:

> First thing I noticed before the accident was, I heard what I would call a speed boat, jet boat, or whatever start up its motor; and it was in a distance, but we could tell that it was—it was running pretty fast. It sounded like it was wide open. It was so wide open for what, from 30 seconds to a minute; and then we heard some kind of a crash, collision.

The Wellcraft had run into the hull of the "Julie V," Fred Hart's 30-foot Bayliner cabin cruiser. There were six people on the Bayliner—Hart; his wife Julia; Julia's daughter, Jewel; Jewel's boyfriend, Kenneth; Julia's other daughter, Lonnie; and Lonnie's baby son, Joseph. Julia had seen the Wellcraft just before impact, and Fred saw it "coming toward us from about 2:00 o'clock. A no-miss angle."

Dennis Norman, who arrived within minutes, said the first thing he saw was "two boats sitting in the water. One boat was turned one way and the other boat was jammed into the side of it. I saw people in the water. I saw mass confusion. There was just a ton of people in the water." Dennis tied his pontoon boat up next to the Julie V and "started pulling passengers in." The "cigarette boat was sinking," so his brother crossed to that boat to bring those two people in.

Appellant was unconscious, with the side of his face stuck in the windshield just to the left of the steering wheel. Carlin was behind him, asking for help to get appellant off the boat. Appellant regained consciousness and was belligerent. The Norman brothers "had to manhandle him" to get him to the pontoon boat. He "was obviously drunk. His face was real messed up." Carlin, who was in better shape, helped move appellant. The Wellcraft sank less than five minutes later.

When the Vessel Assist arrived, the injured were moved to that boat. Dennis Norman said appellant was again uncooperative.

> When I stood him up, I wrapped my arms around him and stood him up; and I said, "[W]e've already unloaded everybody onto the Vessel Assist. They need to get to the hospital." And he was not cooperative. He says, "give me a second, man." I said, "[W]e don't have a second. We have people here dying on the other boat." And he said, "[J]ust chill." When he told me just to chill, I lost it, and I wrapped my arms around him, threw him into the other boat. . . .

---

3. Carlin was described as shorter and stockier than the "good-sized" appellant.

Carlin was able to get on the Vessel Assist on his own, but then unsuccessfully tried to commandeer the boat in an effort to flee the scene. Jewel died of a "skull fracture, crushed chest and asphyxia due to drowning." Trapped in the cabin by the Wellcraft, Lonnie, who sustained a lacerated spleen and liver, and the baby, who sustained a skull fracture, died from their injuries and asphyxia due to drowning.

Appellant was transported to the Conroe Regional Medical Center emergency room, where he was listed in critical condition. The attending nurse said he was "very bloody and screaming and was upset— well, highly upset and he was in pain. And I remember him telling me that he had his f——ing teeth in his hand and I took those from him out of his hand and put them in a jar for him and he was just extremely upset." Both the nurse and doctor noted that appellant smelled very strongly of alcohol. Appellant said "he wasn't f——ing driving" multiple times. He told a trooper that a woman had been driving the Wellcraft, and she had jumped overboard. Appellant had facial injuries, a broken jaw, multiple missing teeth, a lacerated lower lip, multiple contusions across his chest, a ruptured lung and a closed head injury. He had a BAC of .198 at 11:00 p.m. and .180 at midnight.

Carlin was also taken to the E.R. He had a cut brow and eyelid, cuts to his abdomen and leg, and a lacerated liver. He repeatedly stated that appellant had been driving the boat.

**B. The trial and appeal.**

After a competency jury had determined that appellant was competent to stand trial, a separate jury was chosen for the trial on the merits. The two contested issues at trial were whether appellant was intoxicated at the time of the collision, and whether appellant or Gary Carlin was pi-loting the boat when it struck the cabin cruiser. Midway through the trial, the parties agreed and stipulated to following fact: "As a result of the injuries sustained during the incident on July 17, 1999, Reginald Eugene Morris has no memory of the events of that day after leaving Del Lago." Evidence that appellant had been at the wheel included the following:

(1) Appellant's civil deposition testimony that the Wellcraft was his and that he would not have let Carlin drive it in the dark;

(2) Brian Ross's testimony that the Wellcraft left Del Lago shortly before the accident with the taller and thinner of the two occupants (appellant) driving;

(3) The Norman brothers' testimony that appellant was found unconscious near the Wellcraft's steering wheel;

(4) The E.R. doctor's testimony that appellant's injuries were consistent with having hit the steering wheel, while Carlin's were not;

(5) Testimony that some of appellant's teeth were found under the driver's seat of the Wellcraft, directly under the steering wheel; and

(6) The State's reconstruction expert's opinion that appellant was driving the boat.

The State's evidence that appellant was intoxicated included appellant's admission that he was "a little drunk," eyewitness testimony that he was "obviously" drunk, and BAC tests putting him at nearly twice over the then-legal limit.

Evidence that supported the defense theory that Carlin had been behind the wheel included the following:

(1) The defense reconstruction expert's opinion that Carlin was in the driver's seat;

(2) Appellant's prior statement that he had made a conscious decision not to drive the boat that night because he had had too much to drink;

(3) Testimony that appellant was shirtless at Del Lago (coupled with Ross's testimony that the driver had a T-shirt on);

(4) Insurance adjuster Amy Pinkerton's deposition testimony that Carlin said "He had been driving a boat on Lake Conroe that had been in an accident and killed a family or killed some people."; [4]

(5) Tarmar Clement's testimony that Carlin told her, "I didn't see the lights before I hit the boat."; and

(6) Testimony that Carlin had attempted to take over the Vessel Assist boat and drive it away from the scene of the accident.

The defense noted that much of appellant's apparently drunken behavior was consistent with that of someone with a head injury. It also vehemently challenged the State's blood-alcohol evidence. Ultimately the jury credited the State's witnesses, convicted appellant on all three manslaughter counts, and assessed his sentence at 18 years on each count. The trial judge stacked the first two sentences and 12 years of the third, achieving a 48–year sentence. The judge stated, "The Record should be very clear, in the event there is a challenge as to whether I can do what I'm doing, if I can't it's consecutive for 54 years."

In affirming the conviction and reforming the sentence, the court of appeals held the following: (1) the competency jury was

entitled to credit the State's experts' opinions that appellant was competent, and its verdict was not against the great weight and preponderance of the evidence in light of that testimony; (2) the competency jury's verdict was not against the great weight and preponderance of the evidence because it was possible to determine retrospectively that appellant's amnesia did not, under *Jackson v. State*,[5] deprive him of a fair trial; and (3) under *Ex parte Sadler*,[6] the trial judge erred in partially cumulating count III, so it reformed the stacking order to show that count III runs concurrent with count II.

We granted review to examine the court of appeals's application of *Jackson*, and its reformation of the sentence.

## II.

**A. Review of the sufficiency of the evidence to support a competency jury's verdict should be restricted to the evidence before the competency jury, even when the incompetency claim is based on amnesia.**

Appellant asserted that he was incompetent to stand trial because the traumatic brain injury he sustained during the boat accident caused him to have no memory of that event. After a preliminary hearing, the trial court found that appellant's amnesia triggered a right to a competency jury trial.[7] That jury's task was to decide if appellant, who is presumed to be competent, proved his incompetency by a preponderance of the evidence.[8]

*1. The legal standard for determining competency.*

■ A person is incompetent to stand trial if the person does not have: "(1)

4. Carlin died before the trial began.

5. 548 S.W.2d 685 (Tex.Crim.App.1977).

6. 162 Tex.Crim. 170, 283 S.W.2d 235 (1955).

7. Tex.Code Crim. Proc arts. 46B.051 through 46B.055.

8. Tex.Code Crim Proc. art. 46B.003(b).

sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." [9] Evidence relevant to these issues includes whether a defendant can (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify.[10] As the Supreme

9. Tex.Code Crim. Proc. art. 46B.003(a). This is the Supreme Court's "*Dusky*" standard." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). The underlying rationales behind *Dusky* are: safeguarding accuracy and reliability of the trial; enhancing fairness of the criminal process; maintaining the "dignity" of the trial process; and making punishment more just. Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law 4.4(a) (2d ed.1986) (citing Note, *Incompetency to Stand Trial*, 81 Harv. L.Rev. 454, 457–59 (1967–1968)).

10. *See* Tex.Code Crim. Proc. art. 46B.024 Factors Considered in Examination

During an examination under this subchapter and in any report based on that examination, an expert shall consider, in addition to other issues determined relevant by the expert, the following:
(1) the capacity of the defendant during criminal proceedings to: (A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings; (B) disclose to counsel pertinent facts, events, and states of mind; © engage in a reasoned choice of legal strategies and options; (D) understand the adversarial nature of criminal proceedings; (E) exhibit appropriate courtroom behavior; and (F) testify;
(2) whether the defendant has a diagnosable mental illness or is a person with mental retardation;
(3) the impact of the mental illness or mental retardation, if existent, on the defendant's capacity to engage with counsel in a reasonable and rational manner; and
(4) if the defendant is taking psychoactive or other medication: (A) whether the medication is necessary to maintain the defendant's competency; and (B) the effect, if any, of the medication on the defendant's

appearance, demeanor, or ability to participate in the proceedings.

Evidence relating to these statutory factors may be considered by the fact-finder as they are relevant to its 46B.003(a) decision. *See* *Hart v. State*, 173 S.W.3d 131, 140 (Tex.App.-Texarkana 2005, no pet.) (trial court properly denied request to charge the jury on the elements listed in article 46B.024; "Defense counsel's requested instruction contains factors set out by the statute as being necessary for the expert to consider in making his or her determination. Those factors were subject to questioning of the experts at the hearing, but that does not necessarily translate into factors that must be individually presented to the jury in the charge. There is no authority requiring those factors to be separately sent to the jury, and they are on their face factors directed at the expert for use in the expert's evaluation."). *See also Sims v. State*, 279 Ga. 389, 614 S.E.2d 73, 77 (2005) ("The factors to consider in determining a defendant's capability to assist in his defense include whether the defendant can adequately consult with others, knows the names and functions of those involved with the case, and reasonably understands the rules, the specific charges, the penalties and the consequences of the proceedings."); *State v. Snyder*, 750 So.2d 832, 852 (La.1999) ("The facts to consider in determining a defendant's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to

Court stated in *Cooper v. Oklahoma,* " 'Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.' " [11] A defendant's competency to stand trial is a question of fact to be determined by the competency jury.[12]

### 2. The competency jury trial.

At the competency trial, appellant contended that he had no memory from a period of approximately thirty minutes before the accident until four days later. This amnesia interfered with his ability to consult with his attorney and prevented him from having a factual understanding of the proceedings against him because he could not disclose pertinent facts and events to his attorney.

The experts for both the State and defense agreed that appellant had suffered "a profound head injury" and "traumatic brain injury" and that it is common for such an injury to cause retrograde amnesia—an inability to retain memory of events covering a period of time just before the injury.[13] The experts disagreed, however, on the effect of a defendant's amnesia to his competency to stand trial.[14]

Dr. Steven Rosenblatt, a board-certified psychiatrist, testified that he had reviewed appellant's medical records and interviewed him. Dr. Rosenblatt said that appellant told him that, on the night in question, he made a conscious decision not to drive the boat because he had too much to drink and instead went to sleep in the aft area of the boat. Dr. Rosenblatt stated, "If we postulate that he is amnesic, he would have difficulty in refuting what [witnesses] might say." He would also have "great difficulty in testifying concerning what happened during that interval." However, it was Dr. Rosenblatt's opinion that any inability that appellant might have to recount the events during the "interval" did not render him incapable of consulting with his lawyers with a reasonable degree of rational understanding: Appellant was aware of the nature of the charges against him and the potential consequences of a trial, and even if he could not remember the accident itself, he could assist his attorneys by providing relevant information about the day of the accident.

Dr. Daneen Milam, a board-certified neuropsychologist, testified that she reviewed appellant's medical records, conducted a clinical interview of him, and also subjected him to a battery of psychological

deteriorate under the stress of trial."), *rev'd on other grounds by Snyder v. Louisiana,* 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).

**11.** 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (quoting *Riggins v. Nevada,* 504 U.S. 127, 139–40, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring in judgment)).

**12.** *See People v. Palmer,* 31 P.3d 863, 865 (Colo.2001).

**13.** The State did not contest appellant's evidence at the competency hearing that he suf-

fered retrograde amnesia as a result of his injuries from the collision. Dr. Rosenblatt, for instance, acknowledged that he was unaware of any indications that the appellant was malingering.

**14.** We are not asked to decide whether these medical experts' opinions concerning the legal standards by which to measure competency under Texas law were admissible under TEX R. EVID 702–705. They may certainly give their opinions concerning the specific facts and factors set out in art. 46B.024, but the legal definition and standard by which competency is measured is a question of law, not defined by medical experts.

tests. She concluded that appellant, because he does not remember the events for which he is on trial, cannot satisfy the legal standard for competency to stand trial. She testified that appellant would have suffered amnesia from his head injury even if he had not been drinking at the time. Dr. Milam believed that, because of his amnesia, appellant was unable to disclose pertinent information to his attorneys about what happened at the moment of the offense, challenge the accounts of witnesses against him, or testify in his own behalf about the specific event that formed the basis of the charge against him.[15]

Dr. Walter Quijano, a clinical and forensic psychologist, also testified. He said that amnesia alone does not justify a finding of incompetency and that, "[if] the person has amnesia, then one is to determine if the case against him can be reconstructed by witnesses, physical evidence[.]" Dr. Quijano agreed that "[a]mnesia plus no eyewitness and conflicts in expert witnesses ..., those things would render somebody incompetent[.]"[16]

The competency jury also heard from Sergeant Kenneth Henderson, who testified that the only potential eyewitnesses to the collision itself were the people on the two boats. Gary Carlin, the Wellcraft's other occupant and one of the potential witnesses, died in May 2000. Sgt. Henderson testified that none of the occupants of the Julie V could identify the Wellcraft's driver at the time of the collision, but he said that the identity of its driver could be determined by other evidence. Sgt. Henderson said that both State and defense experts examined the boat after it was recovered, and they came to "at least two different opinions ... as a result of the examination."[17] Also, Debbie Cummings, appellant's lifetime partner, testified that he was unconscious for three to four days after the accident. Cummings related several incidents occurring long after the collision that showed appellant continued to suffer from an ongoing short-term memory impairment.

The jury found that appellant had not established by a preponderance of the evidence that he was incompetent.

### 3. The court of appeals.

On appeal, appellant relied on *Jackson*

---

15. A board-certified criminal defense attorney opined that a person who does not have the present ability to consult with his attorney concerning the pertinent facts for which he is charged is not competent to stand trial "unless there is no question from independent sources about what happened." "If he doesn't remember what happened, I don't think he can consult with his attorney." That attorney acknowledged that a defendant who could not remember the facts of the offense because he was either drunk or asleep at the time would not be incompetent to stand trial.

16. Dr. Quijano said that appellant

would be incompetent if there are no external data and only he can reconstruct it. Of course, he could not; but if it could be reconstructed from other sources, then he is not incompetent. Remember, the law says present ability to consult with his law-

yer with a rational understanding. Not factual. It is rational understanding.

According to Dr. Quijano, if experts disagree on interpretation of outside data, then "it would be up to the trier of facts to decide." "If the trier of fact decides there is sufficient external data, then the person is competent in spite of amnesia. If the triers of facts decide that there is no sufficient reconstruction, then they—the amnesiac becomes incompetent."

17. At trial, both sides presented reconstruction experts who gave their opinions, based on the wreckage of the boats and the injuries suffered, on who was driving appellant's boat at the moment of the collision. The State's experts said that appellant was driving; the defense experts had Carlin driving. The pretrial competency jury did not hear any of these expert opinions, only that there was a difference of opinion among unnamed experts.

*v. State* [18] to support his claim that amnesia renders a defendant incompetent to stand trial. In *Jackson*, we rejected the defendant's argument that his amnesia about the act of shooting his sister rendered him incompetent to stand trial.[19] In that case, we applied—in a general sense—the factors set out in *Wilson v. United States*,[20] a federal District of Columbia case, in finding that "the evidence [was] sufficient to support the jury's verdict that appellant was competent to stand trial" and in concluding that Jackson's lack of memory of the shooting did not, in fact, deprive him of a fair trial.[21] The *Wilson* factors to which this Court cited were: (1) the extent to which the amnesia affected the defendant's ability to assist his lawyer; (2) the extent to which the amnesia affected the defendant's ability to testify in his own behalf; (3) the extent to which the evidence could be extrinsically reconstructed; (4) the extent to which the State assisted the defendant and his attorney in that reconstruction; (5) the strength of the prosecutor's case and whether the amnesia prevented the defendant from establishing an alibi or defense; and (6) other facts and circumstances affecting whether the defendant had a fair trial.[22]

The court of appeals in this case affirmed the competency jury's verdict. First, and without reference to *Jackson*, the court held that the competency jury was entitled to credit the opinions of the State's experts that the appellant was competent. In light of that testimony, the jury's verdict was not against the great weight and preponderance of the evidence.[23] Turning, alternatively, to the *Wilson* factors set out in *Jackson*, the court held that the jury's verdict was not against the great weight and preponderance of the evidence because, retrospectively, it was apparent that appellant's amnesia did not deprive him of a fair trial.[24]

---

**18.** 548 S.W.2d 685 (Tex.Crim.App.1977).

**19.** Jackson was prosecuted for voluntary manslaughter for killing his sister. He testified that he was trying to scare his wife with a gun, and the gun " 'hung' and it fired and his wife was hit." *Id.* at 692. He said that he had no memory of the gun somehow discharging a second time, killing his sister. At a pretrial competency hearing, a psychiatrist testified that the killing of Jackson's sister had been so "abnormal" to Jackson that he "could not understand it, and thus could not remember it." *Id.* at 690.

**20.** 391 F.2d 460 (D.C.Cir.1968).

**21.** *Jackson*, 548 S.W.2d at 692.

**22.** *Wilson*, 391 F.2d at 463–64. We note that the factors set out in *Wilson* bear some resemblance to the statutory factors set out in Tex. Code Crim. Proc art. 46B.024(1). To the extent that they are inconsistent, we are bound to follow the more recent Texas statutory scheme.

**23.** *Morris*, 214 S.W.3d at 167–68.

**24.** *Id.* at 169 ("Having reviewed the trial transcripts from both trials relevant to Morris's competency claim, we find Morris's evidence does not establish that: (1) he was unable to consult with his attorney with a reasonable degree of rational understanding; (2) he did not have a rational understanding of the consequences of the proceedings against him; or (3) at the time of the trials he did not have a factual understanding of the basis of the State's claims. The jury's verdict rejecting Morris's claim of incompetency was not against the great weight and preponderance of the evidence."). The court referenced "both trials" because appellant was originally tried for these offenses in July 2000. *See Morris v. State*, No. 09-00-477 CR, 2002 Tex. App. LEXIS 8971, 2002 WL 31835085 (Tex. App.-Beaumont, Dec.18, 2002, pet.ref'd) (not designated for publication) (reversing and remanded the case for a new trial because of errors in admitting and excluding evidence). Morris did not claim that he was incompetent to stand trial before or during his first trial.

*4. The parties' arguments.*

In his petition, appellant claims that the jury's verdict that he was competent to stand trial was against the great weight and preponderance of the evidence when measured against the standard for competency of an amnesiac set out in *Wilson* and referenced in *Jackson*.[25] The State maintains that the *Jackson* standard does not comport with the statutory definition of competency and argues that we should therefore reject it.

*5. Texas competency statutes do not require courts to make a post-trial determination whether the amnesiac defendant was deprived of a fair trial based on specific findings concerning the* Wilson *factors.*

■ We agree with the State that our reference to the *Wilson* factors in *Jackson* to measure the rationality of a jury's pretrial assessment of a defendant's competency to stand trial was peculiar. The federal court in *Wilson* described factors

that it thought were relevant, not to a pretrial competency jury's verdict, but to a trial judge's post-trial determination whether, as the trial on the merits actually unfolded, the amnesiac defendant was deprived of a fair trial.[26] Only the first factor cited by the *Wilson* court, "the extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer," mirrors one of the two inquiries that the Texas competency statute requires.[27] Texas' competency statutes allow competency to be raised, by either party or the judge, at any time before sentence is pronounced.[28] If evidence suggesting that the defendant may be incompetent to stand trial comes to the attention of the court, it must on its own motion raise the issue.[29] But the statutes do not require a trial or appellate court, as a matter of course, to make a post-trial determination whether, as the trial actually unfolds, the amnesiac defendant was in fact deprived of a fair trial based on specific findings under the factors articulated in

**25.** This Court did not specifically apply the six distinct *Wilson* factors to the evidence; we merely listed them and, after setting out the evidence introduced at trial, concluded that "[a]pplying the foregoing standards to the instant case, we cannot say that appellant did not receive a fair trial." 548 S.W.2d at 692.

**26.** The federal court in *Wilson* observed:

A prediction of the amnesic defendant's ability to perform [the basic *Dusky*] functions must, of course, be made before trial at the competency hearing. But where the case is allowed to go to trial, at its conclusion the trial judge should determine whether the defendant has in fact been able to perform these functions. He should, before imposing sentence, make detailed written findings, after taking any additional evidence deemed necessary, concerning the effect of the amnesia on the fairness of the trial.

391 F.2d at 463 (footnote omitted). This procedure has never been a part of Texas competency law or statutes. We will not engraft

such extra-statutory procedural requirements on our comprehensive legislative scheme dealing with competency to stand trial. *See, e.g., People v. Palmer*, 31 P.3d 863, 869 (Colo. 2001) (joining other states in declining to adopt the *Wilson* post-trial procedure because "nothing in the relevant Colorado statutes or case law requires a trial court to make a post-conviction competency determination"). If the Texas Legislature desires to enact a post-conviction, retrospective procedure for reassessing the validity of a competency jury's finding, it may do so.

**27.** TEX.CODE CRIM. PROC art. 46B.003(a).

**28.** TEX CODE CRIM. PROC. arts. 46B.004(a) and 46B.005(d).

**29.** TEX CODE CRIM. PROC. art. 46B.004(b) ("If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.").

*Wilson*.[30] That is not to say that the *Wilson* factors may not be consulted when the question before the court is whether the amnesiac defendant was deprived of a fair trial.[31] They may be relevant.[32] But the sole question presented in this appeal was whether the competency jury's verdict was against the great weight and preponderance of the evidence.[33] An appellate court measures the propriety of the competency verdict based on the evidence before the jury at the time of the verdict under the relevant legal standard set out in art. 46B.003(a).[34] We agree with the court of appeals's first holding: The competency jury was entitled to credit the opinion testimony of the State's experts that the appellant was competent under art. 46B.003(a). Thus, we agree with the court

**30.** Other courts have declined to follow this part of *Wilson*. *United States v. Andrews*, 469 F.3d 1113, 1119 (7th Cir.2006) ("Andrews argues that this court should adopt the rigid, two-step competency evaluation process set forth by the D.C. Circuit in *Wilson* .... In *Wilson*, the D.C. Circuit required the district court to make an initial determination regarding the defendant's competency prior to trial, and then, at the close of trial, make findings of fact that the defendant had demonstrated his competency during the trial.... No other circuit, however, has adopted this comprehensive approach, and we decline to adopt it. Instead, we will continue to follow our precedent, which offers the district court flexibility in exercising its discretion."); *State v. DeMarco*, 2008 Ohio 3511, at ¶ 14–15, 2008 WL 2719575 (Ohio Ct.App.2008) (rejecting *Wilson's* two-step process: "DeMarco cites to no Ohio case or rule of law that requires a trial court to make detailed written findings following the trial of a defendant with amnesia or the hearing on such a defendant's motion to suppress." DeMarco relies upon [*Wilson*], but no "Ohio court [has] adopted this part of *Wilson's* holding."); *People v. Palmer*, 31 P.3d at 869 ("We likewise decline to adopt the rigid procedural requirements of *Wilson*, which includes both a pre-trial prediction as to an amnesiac defendant's competency and also a post-conviction determination as to whether a defendant had indeed been competent"); *State v. Owens*, 248 Kan. 273, 807 P.2d 101, 106–07 (1991) (same); *State v. Peabody*, 611 A.2d 826, 833 (R.I.1992) (same).

**31.** In *Pitonyak v. State*, 253 S.W.3d 834, 855–57 (Tex.App.-Austin 2008, pet. ref'd), the Austin court of appeals used the *Wilson* factors in rejecting the defendant's claim that he raised a question of his competence to stand trial by testimony that he could not remember what happened during the early morning hours when the murder victim was shot in his apartment: "There is no evidence suggesting that appellant might have been incompetent to stand trial. Having considered the record in light of the factors identified in *Wilson* and *Jackson*, we conclude that appellant's claimed inability to remember the shooting for which he was on trial did not result in a trial that was fundamentally unfair." So, too, might a reviewing court consider the Tex.Code Crim. Proc. art. 46B.024(2) factors.

**32.** *See People v. Palmer*, 31 P.3d at 869.

**33.** In this case, appellant specifically requested that the trial judge make a retrospective determination of incompetency. After the close of evidence at the guilt phase of trial, the following exchange occurred:

[Defense Counsel]: Also, Your Honor, we ask the Court to determine as a matter of law that [the appellant] is incompetent to stand trial based upon the evidence presented concerning the destruction of evidence, the inability of [the appellant] to testify in his own behalf, and the stipulation of the State that he has no memory after—based on the injuries.

The Court: That would be denied.

On appeal, appellant has not claimed any error based on this post-trial ruling, nor did he argue that due process compelled the trial judge to take another look at the competency issue.

**34.** *See, e.g., Whitehead v. State*, 130 S.W.3d 866, 872 (Tex.Crim.App.2004) ("An appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling."); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim. App.2003) (applying general rule to review of trial court's ruling on speedy-trial motion). *See generally*, George E. Dix & Robert O. Dawson, 43A Texas Practice· Criminal Practice and Procedure § 43.453 (2d ed.2001).

of appeals that "[t]he jury's verdict rejecting Morris's claim of incompetency was not against the great weight and preponderance of the evidence."[35]

The jury heard psychiatric testimony that indicated that the *Dusky* constitutional and Texas statutory standards had been met and that any inability that appellant might have in recalling and recounting the events during the amnesiac "interval" did not render him incapable of consulting with his lawyers with a reasonable degree of rational understanding. Dr. Rosenblatt testified that appellant was "aware of the nature of the charges against him, aware of the potential outcomes and possible consequences of retrial," all of which suggests "that he does have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." And,

> besides what I just told you about knowing the nature of the charges against him, for example and awareness of potential outcomes and consequences of trial, he also was conversing about the other events of the evening except the specifics of that interval of the boating accident. And the fact that he's able— and that, plus the fact that he was able to name people as potential witnesses on his behalf suggests a factual understanding of the proceedings against him, whether or not he maintains a factual understanding of the specific events for which he appears to be amnesic.

Appellant was able to give Dr. Rosenblatt his account of what he did recall:

> What he told me is that since he had been drinking, that he felt it was not reasonable to drive the boat and thus he decided to go to sleep instead. He also told me that a place he customarily kept the keys to the boat was in the area where the keys were supposed to go, and that he presumed that Mr. Carlin had, despite his asking him not to go over there, nonetheless picked up the keys[.]

He also told Dr. Rosenblatt that

> since the time of his recovery from the injury, that some people have come forward to him who apparently have something to say in terms of bearing on the facts of the case; and I don't think he would refute those because they have things to say which were complimentary to his cause.

The jury could infer from these statements that appellant had a viable defense: He wasn't driving; Carlin was.

The court of appeals appropriately resolved appellant's "great weight and preponderance" claim by deferring to the jury's credibility determinations. We also note that what we stated in *Jackson v. State*—that "no case yet reported . . . has held that the inability to recall the event charged because of amnesia constitutes mental incapacity to stand trial,"[36]—remains true today.[37] This is because the

**35.** *Morris,* 214 S.W.3d at 169. When a defendant challenges a jury finding on which he bears the burden of proof, "the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." *Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990). But review by the Court of Criminal Appeals is limited to "legal sufficiency" of the evidence.

*White v. State,* 591 S.W.2d 851, 854–56 (Tex. Crim.App.1979).

**36.** 548 S.W.2d at 691.

**37.** *See* Jonathan M. Purver, Annotation, *Amnesia as Affecting Capacity to Commit Crime or Stand Trial,* 46 A.L.R.3d 544 at *4 (1965–78 & Supp.2009) ("all of the cases in this annotation dealing with capacity to stand trial have recognized, either expressly or by necessary implication, that the amnesia of the de-

competency question assesses the defendant's mental condition at the time of trial. In that regard, a defendant's amnesia is akin to "missing" evidence.[38]

In his plight, the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime or from a defendant whose only witnesses die or disappear before trial. Furthermore, courts, of necessity, must decide guilt or innocence on the basis of available facts even where those facts are known to be incomplete, and the amnesiac's loss of memory differs only in degree from that experienced by every defendant, witness, attorney, judge, and venireman. How much worse off is a generally amnesic defendant on trial for murder, for example, than one who remembers all but the dispositive fact: who struck the first blow?[39]

Second, other courts have noted that a contrary rule "would unduly hamper the State's interest in the prosecution of viola-tors of its criminal laws and jeopardize the safety and security of other citizens."[40] As one court put it:

When it is considered that the result of an order finding defendant unfit for trial in these circumstances would be outright release, assuming the amnesia is permanent and there is no other mental defect sufficient to warrant commitment, . . ., it can be more easily understood why all the courts which have passed on this question have refused to allow amnesia to be classified as the sort of mental defect causing incapacity to stand trial.[41]

A third reason to reject the *per se* rule is that "amnesia can easily be feigned."[42]

In this case, there was no assertion that appellant's amnesia was feigned. And we do not discount the possibility that there might one day be an extraordinary case in which an inability to recall the charged event because of amnesia could constitute mental incapacity to stand trial.[43] This is

---

fendant does not per se render him incapable of standing trial or receiving a fair trial."); James E. Tysse, *Note: The Right to an "Imperfect" Trial—Amnesia, Malingering, and Competency to Stand Trial*, 32 WM.MITCHELL L.REV. 353, 354 (2005) ("American courts have never found a defendant incompetent to stand trial solely because of amnesia.") (internal quotation marks and citation omitted); *United States v. Andrews*, 469 F.3d at 1119 (federal circuit courts of appeals have "noted that amnesia about the crime does not render a defendant per se incompetent to stand trial").

**38.** *See Morrow v. State*, 293 Md. 247, 443 A.2d 108, 112–13 (1982) (collecting cases and commentaries to the effect that amnesia does not give rise to a finding of incompetency, as it is akin to "missing" evidence or witnesses).

**39.** *See* Comment, *Amnesia: a Case Study in the Limits of Particular Justice*, 71 Yale L.J. 109, 128 (1961).

**40.** *State v. Pugh*, 117 N.J.Super. 26, 283 A.2d 537, 542 (1971) ("Even if in fact defendant did not remember the details of the crime, he

would still be competent to stand trial. Amnesia concerning the crime does not bar prosecution. . . . Amnesia concerning the crime does not render a defendant unable to comprehend his position or to consult intelligently with counsel in the preparation of his defense.").

**41.** *People v. Francabandera*, 33 N.Y.2d 429, 354 N.Y.S.2d 609, 310 N.E.2d 292, 296 (1974); *see generally*, WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW 8.1(a) (2d ed.2003).

**42.** *State v. Owens*, 248 Kan. 273, 807 P.2d 101, 107 (1991).

**43.** *Wilson* is much cited but rarely followed, and virtually never has it led to a finding of incompetency to stand trial. We have found one unpublished case: In *State v. McIntosh*, No. 87-2215, 146 Wis.2d 870, 1988 WL 126494, 1988 Wisc.App. LEXIS 875 (Wis.Ct. App. Aug. 25, 1988), the court applied the *Wilson* factors and found that the defendant had not had a fair trial. McIntosh ran a stop sign and collided with another vehicle, killing its driver. *Id.* at *10. McIntosh received

not one of them. Here, there was ample evidence that appellant was competent to stand trial because he had (1) a sufficient present ability to consult with the lawyer with a reasonable degree of rational understanding; and (2) a rational as well as factual understanding of·the proceedings against him.[44]

## B. The appropriate remedy for an unlawful stacking order is its deletion.

### 1. The trial court's stacking order.

■ The jury convicted appellant of three counts of intoxication manslaughter and sentenced him to eighteen years on each count. When a defendant is convicted of multiple counts of intoxication man-

slaughter, the trial judge has authority to cumulate the sentences or to have them run concurrently.[45] In this case the trial judge stacked the sentence in Count II onto Count I. The judge then purported to stack twelve years of Count III onto Count II: "Six years of the 18–year sentence in ... Count III, ... shall run concurrent with ... Count II ...; and the remaining 12 years shall run consecutive to the sentence in Count II...." This resulted in a 48 year sentence. Recognizing that this was an unorthodox sentence, the trial judge pronounced an alternative sentence, stacking all three counts: "The Record should be very clear, in the event there is a challenge as to whether I can do what

severe head injuries in the crash and had no memory of it. Investigators found that McIntosh's right brake line was severed. But whether his brake line broke prior to the accident or was severed in the accident could not be determined from the physical facts. *Id.* at *11–14. McIntosh's defense was that his brakes failed. *Id.* at *14. The court of appeals held that McIntosh's loss of memory substantially affected reconstruction of this critical evidence. He did not receive a fair trial because the critical evidence of brake failure could not be extrinsically reconstructed without his testimony and the strength of the prosecution's case did not negate his reasonable hypothesis of innocence. *Id.* at *23. There was a real possibility that the amnesia might have been "locking in" exculpatory information. *Id.* at *23–24.

There is also one *amnesia plus* case. *State ex rel. Sisco v. Buford*, 559 S.W.2d 747, 748 (Mo.1978) ("The evidence clearly supports the finding of the trial court that relator cannot aid counsel in the defense of his case.... [T]he evidence indicates that this is not merely a case of amnesia as to the period in question. The witnesses testified that as a consequence of the gunshot wound and the resulting loss of a portion of the brain, what has happened to relator is equivalent to a prefrontal lobotomy, an operation utilized to attempt to decriminalize a person with a violent personality. If successful, such an operation creates a neuter personality. Such per-

son can dress and feed himself and do some handiwork. He could know, as relator did, that he was charged with killing his girl friend. However, ... a prefrontal lobotomy type condition disturbs initiative and in almost all instances causes a marked loss of a person's 'critical faculty,' or, in other words, disturbs their ability to correctly evaluate their behavior or the adequacy of their action. As a result ... relator cannot in an orderly fashion help counsel in the preparation of his defense.").

44. Tex.Code Crim. Proc art. 46B.003(a). And, even if one were to indulge in a post-conviction retrospective assessment of appellant's competency, it is clear that not only was appellant competent to stand trial, he competently mounted a very vigorous defense.

45. When the defendant is convicted of two or more offenses, the trial court generally has discretion to order those sentences to run either consecutively or concurrently. Tex. Code Crim Proc Ann. art. 42.08. If, however, the defendant is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single action, the trial court is generally required to order that the sentences run concurrently. Tex. Penal Code § 3.03(a). But, as an exception to that rule, if the convictions are for intoxication manslaughter arising out of the same episode, the trial court may order that the sentences run

I'm doing, if I can't it's consecutive for 54 years."

### 2. The court of appeals's reformation of the judgment.

The court of appeals held that the partial cumulation order was unlawful under *Ex parte Sadler.*[46] In that case, we had held the that a trial court was without authority to partially cumulate two twenty-five-year sentences to fashion a thirty-five-year sentence.[47] The court of appeals therefore set aside the trial court's order partially cumulating Count III. The court reformed the judgment so that appellant's sentence on Count III runs concurrently with his sentence on Count II. It affirmed the trial court's order cumulating Count II and Count I.

### 3. The parties' arguments.

Both parties disagreed with the court of appeals's resolution. Appellant argues that the entire stacking order is invalid and should be deleted with the judgment so reformed; the State argues that the judge's alternative sentence should be imposed. The State also argues that, if there

had been no stated alternative sentence, the appropriate remedy would have been a remand to the trial court.

### 4. Unlawful cumulation orders do not constitute reversible error.

In *Beedy v. State,*[48] a case decided after the parties submitted their briefs in this case, we addressed a nearly identical issue. There, the trial court had stacked a ten-year deferred-adjudication community-supervision term onto a twelve-year prison sentence.[49] The court of appeals, noting that the trial judge did not have the authority to stack the deferred adjudication community supervision term onto his prison sentence, deleted the cumulation order.[50] The State sought further review, arguing that the case should have been remanded for a new punishment hearing. We held that an unlawful cumulation order did not constitute reversible error under Tex. Code Crim. Proc. art. 44.29 and that the proper remedy for the unlawful cumulation order was to reform the judgment to delete the cumulation order, as the court of appeals had done.[51]

■ We also held,

---

concurrently or consecutively. *Id.,* § 3.03(b)(1)(A).

**46.** *Morris,* 214 S.W.3d at 190 ("The issue now before us was resolved in *Ex parte Sadler,* [162 Tex.Crim. 170, 283 S.W.2d 235 (Tex. Crim.App.1955)]. In reviewing article 774 of the Code of Criminal Procedure, the statute from which article 42.08 is derived, the Court of Criminal Appeals held that a trial court was without authority to partially cumulate two twenty-five year sentences to require the defendant to serve thirty-five years in jail. As Article 42.08 is not materially different than Article 774, we conclude that the holding in *Sadler* prohibits trial courts from partially cumulating criminal sentences.") (internal cite omitted).

**47.** *Sadler,* 283 S.W.2d at 236–37.

**48.** 250 S.W.3d 107 (Tex.Crim.App.2008).

**49.** *Id.* at 109.

**50.** *Id.*

**51.** *Id.* at 113. In reaffirming our cases holding that an unlawful cumulation order is remedied by reforming the judgment to set aside the order, we noted in *Beedy* that 1) "we have always remedied an unlawful cumulation order by reforming the trial court's judgment to delete the unlawful order," rather than reversing, and the Legislature presumably, in amending Article 44.29, approved of this remedy; 2) "a defendant is permitted, on remand for re-sentencing under Article 44.29(b), to elect to have a jury assess punishment. Thus ... there is no foregone conclusion that a remand for re-sentencing would give the trial judge an opportunity to correct the mistake and fashion a punishment for the defendant that approximates, as closely as

In upholding the court of appeals's decision to delete the cumulation order in this case, we do not mean to suggest that we would reach the same conclusion in a case where the trial judge had the authority to cumulate but entered, at his discretion under Article 42.08(a), Texas Code of Criminal Procedure, a cumulation order that lacked the requisite specificity.[32]

The present case, however, is not one involving specificity. Specificity cases are those that deal with the sufficiency of the order cumulating sentences, *i.e.*, whether the order contained the necessary elements or essential recitals such as case numbers, county, and terms of years of prior sentences.[33] In this case, as in *Beedy*, the trial judge simply did not have the authority to enter the order he did. *Beedy* controls this case. The court of appeals appropriately deleted the unlawful

portion and left the lawful portion of the order intact, notwithstanding the trial court's pronouncement of an alternative sentence. We agree with other state courts court that have recently addressed this same issue and held that a trial court is without authority to impose alternative sentences.[31]

## III.

Therefore, because the court of appeals properly found that the competency jury's verdict rejecting appellant's claim of incompetency was not against the great weight and preponderance of the evidence and properly deleted the unauthorized portion of the trial judge's cumulation order, we affirm the judgment of the court of appeals.

PRICE, J., filed a dissenting opinion.

possible, what was originally intended;" 3) we have an "interest in fostering judicial economy and conserving scarce judicial resources" and "deletion of an unlawful cumulation order is an efficient corrective action that removes the illegality from the judgment while leaving the remaining, lawful portions of the judgment intact." *Id.* at 113–14.

52. *Id.* at 114.

53. *Young v. State*, 579 S.W.2d 10, 11 (Tex. Crim.App.1979) (cumulation orders should contain: (1) the trial number of the prior conviction; (2) the correct name of the court where the prior conviction was taken; (3) the date of the prior conviction; (4) the term of years of the prior conviction; (5) the nature of the prior conviction).

54. *Ben–Yisrayl v. State*, 908 N.E.2d 1223 (Ind. App.2009). The Indiana court explained,

[D]esignated alternative sentences, in theory [are] arguably never simultaneously imposed in violation of double jeopardy. Nevertheless, the imposition of two sentences, with one automatically to take effect upon the vacation of the other, especially when the other remains viable and the focus of

the proceedings, creates needless risk for overlap and accompanying double jeopardy violations.

With respect to practical considerations, it is apparent from this case that the alternative sentencing scheme is fraught with peril. By providing for one imposed sentence and another potential sentence, this scheme creates ambiguity and confusion with respect to questions of waiver and preservation of error, it blurs issues available for and addressed upon review, and it obfuscates orders and instructions upon remand. Perhaps most significantly, it fundamentally alters standard appellate procedure by either circumventing the direct appeal process or tolling it indefinitely....

*Id.* at 1230. *See also People v. Corbett*, 713 P.2d 1337, 1339 (Colo.Ct.App.1985) ("The statutes do not provide any authority for an alternative sentence such as the trial court imposed here in the event the death penalty were found to be unconstitutional."); *State v. Sturgis*, 110 Me. 96, 85 A. 474, 476 (1912) ("It is fundamental law that the sentence in a criminal case should be definite and certain, and not dependent on any contingency or condition" and "a sentence in the alternative is bad for uncertainty.").

KELLER, P.J., filed a concurring and dissenting opinion in which MEYERS, J., joined.

PRICE, J., filed a dissenting opinion.

The court of appeals found that the jury's verdict that the appellant was competent to stand trial, notwithstanding his claim that he had no memory of the offense, was *not* against the great weight and preponderance of the evidence.[1] We granted both the appellant's and the State's petitions for discretionary review in order to revisit *Jackson v. State*,[2] our leading authority on the relevance of amnesia to the issue of a criminal defendant's competency to stand trial under the Texas statutory scheme. The appellant claims that the jury's verdict at the competency hearing that he was competent to stand trial was against the great weight and preponderance of the evidence—at least when measured against the standard for competency of an amnesiac adopted in *Jackson*.[3] The State maintains that the *Jackson* standard does not comport with the statutory definition of competency and argues that we should therefore now reject it. I would vacate the judgement of the court of appeals and remand to that court to reconsider its great-weight-and-preponderance determination in light of the standard for competency I suggest today. Because the Court does not, I respectfully dissent.

## OVERVIEW OF THE CASE

The appellant was charged with three counts of intoxication manslaughter. The evidence at trial showed that, after dark on July 17, 1999, the appellant's high-speed boat collided with a cabin cruiser on Lake Conroe, killing three people on the cabin cruiser. The two contested issues at trial were whether the appellant was intoxicated at the time, and whether the appellant or his passenger, Gary Carlin, was piloting the boat when it struck the cabin cruiser. The appellant hit his head in the accident, suffering a traumatic brain injury. At the trial on the merits, the parties stipulated that, "as a result of [this injury, the appellant] has no memory of the events" from about a half hour before the collision until several days later. The jury convicted the appellant on all three counts and assessed his punishment at eighteen-year sentences for each count.[4]

---

1. *Morris v. State*, 214 S.W.3d 159, 164–68 (Tex.App.-Beaumont 2007).

2. 548 S.W.2d 685 (Tex.Crim.App.1977).

3. Appellant prays that we find the competency jury's verdict to be against the great weight and preponderance of the evidence and that we therefore remand the cause to the trial court for a new trial. However, because this Court (unlike the courts of appeals) lacks jurisdiction to unfind facts in non-capital cases, we are unable to comply. *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990). All we can do is say whether the court of appeals applied the proper legal standard in determining whether the competency jury's verdict was against the great weight and preponderance of the evidence and remand the cause to the lower court to reconsider the issue if it applied an improper standard on its initial review. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App.1997).

4. The trial court ordered that the first two eighteen-year sentences should run consecutively to one another and that twelve years of the third eighteen-year sentence should run consecutively to the second eighteen-year sentence. The court of appeals held that this was an improper cumulation order, and reformed the judgment to reflect that the third eighteen-year sentence should run fully concurrent with the second eighteen-year sentence. *Morris v. State, supra*, at 188–90. We granted discretionary review from both parties challenging the propriety of this holding. Because I would remand to the court of appeals for reconsideration of the appellant's competency claim, I would refrain from addressing the punishment issue at this time.

Prior to trial, a separate jury was empaneled, pursuant to Subchapter C of Chapter 46B of the Code of Criminal Procedure,[5] to decide whether the retrograde amnesia that resulted from the appellant's head injury rendered him incompetent to stand trial. After hearing expert testimony from both parties, the jury found that the appellant had not established by a preponderance of the evidence that he was incompetent. On appeal, the appellant argued that the jury's verdict was against the great weight and preponderance of the evidence. He argued that, measured against the factors identified by this Court in *Jackson*, the evidence that his amnesia rendered him incompetent to stand trial was virtually uncontradicted.

The court of appeals disagreed. First, and without reference to *Jackson*, the court of appeals held that the competency jury was entitled to credit the opinion testimony of the State's experts that the appellant was competent and that its verdict was not against the great weight and preponderance of the evidence in light of that testimony. Turning, alternatively, to the *Jackson* factors, the court of appeals held that the jury's verdict was not against the great weight and preponderance of the evidence because the course of events *during the subsequent trial* were such that it was possible to determine retrospectively that the appellant's amnesia did not deprive him of a fair trial. We granted both the Appellant's and the State's petitions for discretionary review in order to examine the proper application of our decision in *Jackson* to the facts and procedural posture of this case.

As I understand the Court's opinion today, it essentially says three things with respect to these issues that I agree with. First, the Court holds that our present statutory scheme does not accommodate the kind of retrospective determination of competency that the court of appeals apparently believed that *Jackson* called for.[6] I certainly agree that it was "peculiar" for this Court in *Jackson* to have measured the rationality of the pretrial competency jury's verdict by evidence that the competency jury was not, and could not possibly have been, aware of.[7] Second, I also agree with the Court's implication that some of the factors that *Jackson* adopted, albeit they were generated for application to a retrospective determination of competency, may nevertheless be relevant to a pretrial competency jury's determination—to the extent that they can be anticipated and proven pretrial.[8] Finally, I also agree with the Court that the only question before us *today* is whether the competency jury's verdict in the appellant's case was against the great weight and preponderance of the evidence *measured against the evidence that was before it at the competency hearing.*

I ultimately take issue, however, with the way the Court resolves the great weight and preponderance question. Like the court of appeals, this Court upholds the competency jury's verdict because it

---

5. Tex.Code Crim Proc. arts. 46B.051 through 46B.055.

6. *See* Majority opinion, at 290 ("But the statutes do not require a trial or appellate court, as a matter of course, to make a post-trial determination whether, as the trial actually unfolds, the amnesiac defendant was in fact deprived of a fair trial based on specific findings under the factors" that *Jackson* adopted

from *Wilson v. United States,* 129 U.S.App. D.C. 107, 391 F.2d 460 (1968)).

7. Majority opinion, at 290.

8. *See id.* at 291 ("That is not to say that the *Wilson* factors may not be consulted when the question before the court is whether the amnesiac defendant was deprived of a fair trial.")

"was entitled to credit the opinion testimony of the State's experts that the appellant was competent" under our statutory standard.[9] In my mind, the resolution is not so simple as this. The parties' respective experts gave opinions that were predicated on wildly variable understandings of how the constitutional/statutory standard for competency to stand trial ought to apply in the context of an amnesiac defendant. Whether the competency jury's verdict was against the great weight and preponderance of the evidence is a function, it seems to me, of which of these competing expert views (if any) best represents an application of the proper legal standard. Competency, *vel non*, may well be a question of fact, as the Court asserts.[10] But the proper determination of whether an amnesiac defendant is incompetent depends upon a proper understanding of what *the law* contemplates incompetency to *mean* in this context. The variability of the experts' competing views in this case is an indication of the need for clarification of the law. This is not a "credibility" determination;[11] the competency jury should not be allowed to decide which expert best understands how the statutory test for competency ought to apply to an amnesiac

defendant. The Court should give the parties greater guidance on what the legal standard is in this context, and then remand the cause for the court of appeals to reconsider the case under that standard.

## THE LEGAL LANDSCAPE

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."[12] The prosecution and conviction of an accused while he is incompetent violates due process.[13] The standard for determining competency to stand trial under the Due Process Clause of the Fourteenth Amendment is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."[14] This constitutional standard had been incorporated verbatim into statutory law in Texas since 1975.[15] It presently appears in Article 46B.003(a) of the Code of Criminal Procedure.[16] Under Texas

---

9. *Id.* at 291. The Court also declares itself in agreement with court of appeals's judgment that the competency verdict was not against the great weight and preponderance of the evidence. *Id.* Of course, this Court has no jurisdiction ultimately to pass on this question; we are limited to making pronouncements about whether the courts of appeals have applied the appropriate legal standard. *See* note 3, *ante.*

10. *Id.* at 287.

11. *See id.,* at 292 ("The court of appeals appropriately resolved appellant's 'great weight and preponderance' claim by deferring to the jury's credibility determinations.").

12. *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

13. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Medina v. California,* 505 U.S. 437, 439, 449 & 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

14. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Godinez v. Moran, supra.*

15. *See* Acts 1975, 64th Leg., ch. 415, p. 1095, § 1, eff. June 19th, 1975.

16. Tex.Code Crim. Proc. art. 46B.003(a). At the time of the appellant's competency hearing, in February of 2004, this provision had just become effective. *See* Acts 2003, 78th Leg., ch. 35, § 1, p. 57, effective Jan. 1, 2004.

law, the defendant is presumed to be competent and bears a burden to prove his incompetence by a preponderance of the evidence.[17]

In *Jackson* we found "no case yet reported which has held that the inability to recall the event charged because of amnesia constitutes mental incapacity to stand trial."[18] It remains the case to this day that no jurisdiction has ever held that a defendant's loss of memory of the conduct with which he is criminally charged will, by itself, render him incompetent.[19] Nevertheless, the Court recognized in *Jackson* that amnesia can sometimes be relevant— maybe even determinative—to the competency assessment.[20]

Jackson was prosecuted for voluntary manslaughter for killing his sister.[21] He was able to testify at trial, where he related that he was trying to scare his wife with a gun when it accidentally discharged, wounding her.[22] He apparently had no memory of the gun somehow discharging a *second* time and killing his sister. At a pretrial competency hearing, a psychiatrist testified that the killing of Jackson's sister had been so "abnormal" to Jackson that he "could not understand it, and thus could not remember it."[23] Jackson passed a polygraph examination showing the memory loss was genuine, and the psychiatrist considered it to be permanent.[24] On direct appeal to this Court, Jackson challenged the sufficiency of the evidence to support the jury's finding that he was competent to stand trial, notwithstanding his amnesia.[25] In rejecting Jackson's argument, we implicitly adopted a set of factors for determining the impact of amnesia upon competency gleaned from *Wilson v. United States*,[26] a decision from the District of Columbia Court of Appeals that we identified as the "leading case" on the subject.[27]

Our adoption of the *Wilson* factors to measure the rationality of a jury's *pre-trial* assessment of a defendant's competency to stand trial was, at least in one important respect, "peculiar" indeed.[28] The court in *Wilson* described factors it believed relevant, *not* to a pre-trial jury's prediction with respect to an amnesiac defendant's

---

17. Tex.Code Crim. Proc. art. 46B.003(b).

18. 548 S.W.2d at 691.

19. *See* Majority opinion, at 292–93, note 37.

20. *See* George E. Dix & Robert O. Dawson, 42 Texas Practice: Criminal Practice and Procedure § 26.15 (2d ed.2001), at 409 ("After surveying cases from other jurisdictions, *Jackson* rejected the views that amnesia is irrelevant to competency or that it is inherently incapable of ever justifying a conclusion that a defendant is incompetent.").

21. 548 S.W.2d at 688.

22. *Id.* at 688, 692.

23. *Id.* at 690. Jackson apparently suffered some kind of dissociative amnesia.

24. *Id.*

25. *Jackson* was decided before the courts of appeals acquired jurisdiction over criminal appeals in non-capital cases, and before this Court clarified, in *Meraz v. State, supra*, that, because the statutory burden of proof is on a defendant to prove he is incompetent to stand trial, any challenge to an adverse jury finding must be that such a finding was against the great weight and preponderance of the evidence. *See Bigby v. State*, 892 S.W.2d 864, 870–75 (Tex.Crim.App.1994) (Court of Criminal Appeals still retains fact jurisdiction in capital direct appeals to determine whether issue upon which defendant has the burden of proof was decided adversely to him "against the great weight and preponderance of the evidence").

26. 129 U.S.App.D.C. 107, 391 F.2d 460 (1968).

27. 548 S.W.2d at 692.

28. Majority opinion, at 290.

competency, but to a trial judge's post-trial determination whether, as the trial actually unfolded, the amnesiac defendant was in fact deprived of a fair trial. As the court observed:

> A prediction of the amnesic defendant's ability to perform [the basic *Dusky*] functions must, of course, be made before trial at the competency hearing. But where the case is allowed to go to trial, at its conclusion the trial judge should determine whether the defendant has in fact been able to perform these functions. He should, before imposing sentence, make detailed written findings, after taking any additional evidence deemed necessary, concerning the effect of amnesia on the fairness of the trial. In making these findings the court should consider the following factors:
>
> (1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer. (2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf. (3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi. (4) The extent to which the Government assisted the defendant and his counsel in that reconstruction. (5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so. (6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.[29]

Evidence with respect to some of the *Wilson* factors (most obviously, the "strength" of the prosecution's case, and whether the defendant "had" a fair trial) may not even be available for the parties to present to a jury in a pre-trial competency hearing. It would certainly be anomalous to measure the rationality of a jury's competency verdict by facts and circumstances that were never presented to it.[30]

This is not to say, however, that evidence with respect to many of the *Wilson* factors could *not* be anticipated, developed pre-trial, and presented to a pre-trial com-

---

29. *Wilson v. United States*, 391 F.2d at 463–64 (footnote omitted).

30. As a general rule, reviewing courts should measure the propriety of a trial-level ruling on the basis of the facts that were before the fact-finder at the time of the ruling. George E. Dix & Robert O. Dawson, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.453 (2d ed.2001). *Cf. Whitehead v. State*, 130 S.W.3d 866, 872 (Tex.Crim.App.2004) ("an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling."); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim.App.2003) ("As a general rule, an appellate court reviewing a trial court's ruling on the admission or exclusion of evidence must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled."). Nevertheless, in *Jackson*, we applied the *Wilson* factors by looking beyond the competency hearing to the record of the trial itself and held that Jackson's lack of memory of the event did not, in fact, deprive him of a fair trial. 548 S.W.2d at 692. On *this* basis, we found "the evidence sufficient to support the jury's verdict that appellant was competent to stand trial." *Id.* Thus, we essentially substituted our own *post hac.* assessment of the fairness of Jackson's trial for a determination of the rationality of the competency jury's pretrial prediction. It is not surprising, then, if equally anomalous, that the court of appeals took a similar approach in its consideration of the appellant's claim in light of the *Wilson* factors. *Morris v. State, supra*, at 167–69.

petency jury.[31] Indeed, that is precisely what the appellant attempted to do in this case.[32]

## THE COMPETENCY HEARING

At the competency hearing, the appellant first called Dr. Steven Rosenblatt, a psychiatrist, to the witness stand as an adverse witness. At the behest of the prosecution, Rosenblatt had reviewed the appellant's medical records and conducted a ninety-minute clinical interview on November 5, 2003, some three months prior to the competency hearing. He agreed that the appellant had suffered "a profound head injury" that caused "traumatic brain injury." It is common for such an injury, he acknowledged, to cause retro-grade amnesia, that is, an inability to retain memory of events covering a period of time just before the injury. The appellant told Rosenblatt that he had been drinking and thought it would not be "reasonable" to drive the boat in that condition, so he went to sleep in the aft part of the boat instead, and that "he did not recall anything after going to sleep." [33]

Rosenblatt found that the appellant's "presentation was consistent with either two things: either having no recollection of that interval between going to sleep onboard the boat and awakening in the hospital, or that he is fabricating that information." However, Rosenblatt acknowledged that he was unaware of any indications

31. I would reject the State's contention that the *Wilson* factors are relevant *only* to a post-trial, *post hac.* determination of competency, and cannot be developed pre-trial.

32. At the conclusion of the pre-trial competency hearing, the appellant requested that the trial court submit the *Wilson* factors to the jury in the jury charge to aid in its decision whether he was incompetent under the *Dusky*/Article 46B.003(a) standard. The trial court refused. The appellant did not raise this refusal as jury-charge error on appeal, however, and it is therefore not before us on discretionary review. When performing the kind of factual-sufficiency analysis that the appellant *did* request on appeal, the reviewing court should measure the rationality of the jury's verdict by holding the evidence up to a hypothetically correct jury charge. *Wooley v. State*, 273 S.W.3d 260, 266–68 (Tex.Crim.App. 2008); *Grotti v. State*, 273 S.W.3d 273, 280–81 (Tex.Crim.App.2008).

Additionally, and consistent with *Wilson*, the appellant specifically requested the trial court to make a retroactive determination of incompetency. At the conclusion of the charge conference at the close of evidence at the guilt phase of trial, the following exchange occurred:

[Defense Counsel]: Also, Your Honor, we ask the Court to determine as a matter of law that [the appellant] is incompetent to stand trial based upon the evidence presented concerning the destruction of evidence, the inability of [the appellant] to testify in his own behalf, and the stipulation of the State that he has no memory after—based on the injuries.

THE COURT: That would be denied.

However, the appellant claimed no error on appeal predicated upon this post-trial ruling either. The appellant does not now argue that due process compelled the trial court to take another look at the issue of his competency once the trial had concluded, as the federal court in *Wilson* required. Thus, the sole question presented on appeal and in the petitions for discretionary review is whether the competency jury's verdict was against the great weight and preponderance of the evidence.

33. Rosenblatt, and later, Dr. Quijano, both suggested that the appellant's inability to remember the offense may have stemmed, not from his amnesia, but from the fact that he claimed to have gone to sleep in the aft of the boat before the accident. By that reckoning, of course, the appellant could not have been the driver of the boat. The State's theory of the case necessitates that the appellant either never went to sleep as he claimed, or else that he eventually woke up and drove the boat, causing the accident. Either way, consistent with the State's theory of the case, any inability to remember the accident that the appellant suffered must have derived from his head injury, not sleep.

that the appellant was malingering. When asked whether the appellant would be able to refute witness testimony about events that took place during this interval, Rosenblatt answered: "If we postulate that he is amnesic, he would have difficulty in refuting what they might say." With respect to whether the appellant would be able to testify in his own behalf, Rosenblatt testified as follows:

Q. Now, would you agree with me that right now, Mr. Morris, based upon your examination of him November 5th, that Mr. Morris cannot—lacks the capacity to testify in his own behalf concerning the events that occurred after he got in the boat and until he woke up in the hospital?

A. If the information that he gave me is accurate, then from the time that he got in the boat and went to sleep until the time he awoke, until he awakened following the trauma, he would not have any recollection of that interval and, consequently, would have great difficulty in testifying concerning what happened during that interval.

Q. Would that impact affect his ability to testify in his own behalf, not being able to recount that integral [sic] of time, whatever that time is?

A. Well, I believe that he does have the capacity to testify in his own behalf concerning all the things that he knows; and I do not know whether he has any knowledge of what happened during that particular interval.

Q. There is no indication that he has any knowledge of that event, based upon your examination of him?

A. There is—that's correct.

Q. And based on examination of all the records you see?

A. That's correct.

It was Rosenblatt's ultimate opinion, however, that any inability that the appellant may have to recount the events during the "interval" did not render him incapable of consulting with his lawyers with a reasonable degree of rational understanding. He believed that the appellant's inability to remember what happened at the time of the accident was relevant to, but not determinative of, his conclusion that the appellant was competent. When asked whether, if the *only* criteria was whether the appellant could relate the facts from his amnesic "interval" to counsel, the appellant would be incompetent, Rosenblatt replied:

In the event that the only important part was the part from the time that he apparently went to sleep until he awakened in the hospital, there were no other factors, no other evidence, and no way of getting information about that, then— then he probably would not be able to assist his attorney and, thus, would not be competent to stand trial.

Under questioning by the prosecutor, Rosenblatt opined that for the appellant to be competent "does not require ... that he remember everything in perfect, exact detail," and that, because the appellant was able to consult with his lawyers about other aspects of the State's evidence, covering events that occurred both before and after his lost "interval," he was competent to stand trial.

The appellant next called Jack Zimmerman, a board-certified criminal-defense attorney, to the stand. Zimmerman provided his professional opinion that, under certain circumstances, a defendant who, because of organic brain injury, cannot remember the events that make up the offense charged against him may be incapable of consulting with his counsel.

Q. Is a person who does not have the present ability to consult with his attor-

ney concerning the pertinent facts for which he is charged competent to stand trial?

A. In my opinion, he is not, unless there is no question from independent sources about what happened.

Q. So, if, for example, multiple experts disagree on the facts, interpreting the facts of the case, would that be a pertinent factor?

A. Absolutely, because if he doesn't—if he or she does not—is not able to tell the lawyer what really happened, at least from that person's perspective, how is the lawyer to challenge the other witnesses that came to a different conclusion?

Q. If there is only one witness to the event and that person subsequent to the event dies, does that enter into your equation?

A. Well, it would in the same token as I said earlier. If there is still some other evidence that would establish unequivocally what the facts are in that defense, then it would be less important; but if ... there are only two possible witnesses to what happened—one of them is the accused and can't remember and the other is a dead person—then obviously that person that's on trial is not going to be able to assist his lawyer.

Q. He would not have the present ability to consult with his attorney?

A. If he doesn't remember what happened, I don't think he can consult with his attorney.

Zimmerman acknowledged on cross-examination that a defendant who could not remember the facts of the offense because he was either drunk or asleep at the time would not be incompetent to stand trial.

Dr. Daneen Milam, a board-certified neuropsychologist, was more categorical than Zimmerman in believing that a defendant who does not remember the events for which he is on trial cannot satisfy the legal standard for competency to stand trial. Milam reviewed the appellant's medical records, and agreed that he had suffered a severe head injury. She conducted a clinical interview and also subjected him to a battery of psychological tests. The testing revealed deficits in the appellant's left temporal lobe that affected his ability to transfer "working memory" into "long-term memory." Validity tests also showed he was not malingering. Milam maintained that the appellant would have suffered amnesia from his head injury even had he not been drinking at the time.[34] She acknowledged that the appellant's amnesia did not prevent him from developing a relationship with his attorneys, helping them prepare for trial, or comprehending and participating in the trial proceedings. Nevertheless, she believed that, because of his amnesia, the appellant was unable to disclose pertinent information to his attorneys about what happened at the moment of the offense, challenge the accounts of witnesses against him, or testify in his own behalf about the specific event that formed the basis of the charge against him. She concluded that, on balance, the appellant was incompetent to stand trial "[b]ecause he cannot do the separate factors that would be required to be able to defend himself."

34. The medical records showed that the appellant had a blood alcohol concentration of .18 when he arrived at the hospital. Milam testified that, while alcohol can certainly induce or exacerbate amnesia, alcohol-induced amnesia does not typically affect memory of events occurring after the alcohol wears off. Because the appellant was unable to remember events for several days after the accident, Milam concluded that the amnesia was a product of his head injury. No witness at the competency hearing testified otherwise.

Sergeant Kenneth Henderson of the Montgomery County Sheriff's Office was present when the appellant's boat was recovered from the floor of the lake. He testified that there were two people on the appellant's boat at the time of the collision, the appellant and Gary Carlin. Carlin had since died. Experts from both the State and the defense examined the boat after it was recovered, and came to "at least two different opinions ... as a result of the examination." Although no eyewitness could identify the driver of the appellant's boat, there were "other factors that tend to show who was driving the boat," some medical and some scientific. However, the experts differed in their interpretations of this evidence.[35]

The State called clinical and forensic psychologist Dr. Walter Quijano to the stand. Quijano did not extensively review the appellant's medical records or personally evaluate him for competency, but he testified generally that amnesia alone does not justify a finding of incompetency and that, "[if] the person has amnesia, then one is to determine if the case against him can be reconstructed by witnesses, physical evidence[.]" On cross-examination, Quijano elaborated:

Q. ... there is a lot that we don't know happened.

A. That's exactly correct, that many of these things are speculative; and that is why amnesia alone is not sufficient to declare somebody incompetent.

Q. It's amnesia plus no witnesses.

A. Amnesia and the lack of external data.

Q. And part of the external—external data is no witnesses?

A. No witnesses.

Q. Conflicts in expert opinion?

A. Yes.

Q. Amnesia plus no eyewitness and conflicts in expert witnesses, those things could render somebody incompetent?

A. That is true. If those conditions are present, then he will be incompetent.

Quijano also acknowledged that whether a defendant's amnesia would prevent him from testifying about unremembered events is also an "important factor" in the competency determination.

Later, on re-cross-examination, Quijano returned to the subject of conflicting expert testimony.

Q. If there is—going back, the experts are conflicting. The expert opinions do conflict, right?

A. Yes.

Q. And it goes back to if they are conflicting about what the meaning of the—how the accident occurred or what happens, the testimony of the individual becomes more important, correct?

A. Yes.

Q. And who is driving or who can identify who the driver was, then it becomes even more important, correct?

A. Yes.

Q. And under those circumstances, a person would be incompetent?

35. Indeed, at trial, both sides presented experts in engineering and biomedical/biomechanical engineering to reconstruct the accident and try to determine, from the wreckage of the boats and the injuries suffered, who was driving the appellant's boat at the moment of the collision. The State's experts believed that the circumstantial evidence was more consistent with the conclusion that the appellant was the driver, while the defense experts believed it more likely that Carlin had been driving. *Morris v. State, supra,* at 168. The pre-trial competency jury did not hear the specifics of any of these expert opinions, but only that there was a difference of opinion among unnamed experts.

A. It would—he would be incompetent if there are no external data and only he can reconstruct it. Of course, he could not; but if it could be reconstructed from other sources, then he is not incompetent. Remember, the law says present ability to consult with his lawyer with a rational understanding. Not factual. It is rational understanding.

And so, the factual data have to be brought in from the outside in the case of in coma—not in coma, amnesiac.

Q. So, if experts disagree on interpretation of outside data—

A. Then it would be up to the trier of facts to decide.

Q. But then, of course, you have incompetency.

A. Correct. If the trier of fact decides there is sufficient external data, then the person is competent in spite of amnesia. If the triers of facts decide that there is no sufficient reconstruction, then they—the amnesiac becomes incompetent.

After it retired to deliberate, the competency jury sent out a note requesting the trial court to provide "a copy of the questioning and answers of Dr. Kahano [presumably Quijano]." The trial court instructed the jurors that they could have a witness's testimony read back to them, but only after they first gave written notice of a disagreement as to some specific aspect of the witness's testimony.[36] The jury sent no further notes before finding that the appellant had failed to prove he was incompetent to stand trial by a preponderance of the evidence.

## ANALYSIS

### The Competing Experts

The appellant's competency hearing was not simply, as the court of appeals seems to have viewed it, a battle of experts—at least not in the usual sense of a disagreement among expert witnesses who have applied the same legal standard to the facts as they perceive them. Each expert at the appellant's competency hearing had a different conception of how amnesia bears on the question of competency to stand trial. Rosenblatt believed that a defendant's ability to remember the events of the offense would be relevant to, but far from determinative of, his ability to consult with counsel with a reasonable degree of rational understanding. In Rosenblatt's opinion, a failure to remember the events that comprised the offense could never, without more, render the appellant incompetent. Milam took the polar-opposite view, that no matter how else the appellant may be able to assist his attorneys in his own defense, if his amnesia prevented him from giving them a first-hand account of the facts of the offense, he could not be considered competent.

Quijano (in whose testimony the jury seems to have been particularly interested) carved out a middle ground which comports more closely, if imperfectly, with what I would hold to be the appropriate legal standard to be. He believed that a defendant's inability to remember the event itself because of amnesia would render him incompetent only if there were insufficient "external data" to allow his counsel to reconstruct the offense without resorting to the appellant's lost account. I think that the expert whose view most closely reflects the appropriate legal stan-

---

**36.** *See* TEX.CODE CRIM. PROC. art. 36.28 ("In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other[.]").

dard is Zimmerman. Zimmerman opined that, unless "independent sources" would allow the parties to "establish unequivocally" what happened, the defendant's involuntarily induced amnesia, if it caused him not to remember the specific events giving rise to the criminal charges against him, would render him incapable of assisting in his defense, and hence, incompetent.

Unfortunately, because Quijano and Zimmerman did not interview the appellant or review his medical records, neither of them was in a position, or was even asked, to express an ultimate opinion about whether the appellant himself was competent to stand trial.[37] Only Rosenblatt and Milam expressed opinions with respect to the appellant's competency. In my view, the court of appeals erred to resolve the appellant's great-weight-and-preponderance claim by merely deferring to the jury's apparent decision to credit Rosenblatt's expert opinion over Milam's, when neither Rosenblatt nor Milam was operating under a wholly appropriate standard.[38] For this reason, I would remand the cause to the court of appeals to reconsider the appellant's claim in light of the proper standard, to which I now turn.

### Amnesia and Incompetency to Stand Trial

Under the *Dusky*/Article 46B.003 standard, to be competent a defendant must have "sufficient present ability to consult with [his attorney] with a reasonable degree of rational understanding." Read narrowly, this language does not seem to require that a defendant have any memory of the alleged offense in order to be competent to stand trial, so long as he has the *present* mental wherewithal to communicate rationally with counsel. Under this understanding of the standard, amnesia would have no bearing at all on the competency determination.[39] I would reject this narrow construction of the standard, however, for three reasons.

First, such a narrow construction fails to take full account of the constitutional prohibition against being tried while incompetent. Consistent with due process, the State may not prosecute a criminal defendant who is unable, not simply to consult with counsel, but also, more broadly, to "assist in preparing his defense."[40] An amnesiac who lacks any memory of the events for which he is on trial undoubtedly suffers at least some impairment in his ability to assist in the preparation of his defense.[41] A too-narrow construction of

---

**37.** The court of appeals asserted that Quijano testified that the appellant was competent. *Morris v. State, supra,* at 167. While it is true that Quijano testified that amnesia *alone* would not render the appellant *in*competent, I cannot find anyplace in the record where he was ever asked by either party to express an ultimate opinion whether the appellant was competent to stand trial.

**38.** *Morris v. State, supra,* at 167.

**39.** The Court also seems to reject this narrow reading of the standard—at least inasmuch as it refuses categorically to "discount the possibility that there might one day be an extraordinary case in which an inability to recall the charged event because of amnesia could constitute mental incapacity to stand trial." Ma-

jority opinion, at 293. It is not at all clear to me from the Court's opinion, however, how it would be able to identify such "an extraordinary case." Perhaps a case in which the defendant, through no fault of his own, cannot remember the charged event, the possibility of a "viable defense" seems manifest under the circumstances of the particular case, but the defendant wholly lacks the necessary "external data" (in Dr. Quijano's terms) to marshal any evidence in support of that defense? *Id.* at 306.

**40.** *Drope v. Missouri, supra,* at 171, 95 S.Ct. 896.

**41.** In *Dusky,* the Supreme Court agreed with the Government's concession that competency must entail *more* than a finding that "the

the *Dusky*/Article 46B.003 standard threatens to inadequately express the true ambit of the constitutional protection, and courts should prefer a statutory construction that does not provoke constitutional questions.[42] Second, our opinion in *Jackson* implicitly rejected such a narrow view of *Dusky*. Otherwise, we would never have looked to the *Wilson* factors for guidance, but would simply have held, categorically, that amnesia has no relevance to the competency calculus. Third, the Texas Legislature has made it manifest that it actually contemplated a broader understanding of Article 46B.003. In Article 46B.024 of the Code of Criminal Procedure, the Legislature enumerated certain factors it considered mandatory to any expert evaluation of competency to stand trial.[43] Among those factors is whether the defendant is able to "disclose to counsel pertinent facts, events, and states of

mind."[44] This factor is relevant to the competency determination only if the present ability to consult with counsel includes the present ability to relate to counsel the events of the crime itself. Amnesia, no less than, say, schizophrenia or some other debilitating mental illness, may very well adversely affect a defendant's ability to relate the specifics of the offense. For all these reasons, I reject a narrow understanding of Article 46B.003(a)(1), and would hold that the genuine inability of a defendant to remember the facts of the offense because of injury-induced amnesia is a relevant determination in whether he has the present ability to consult with his counsel with a reasonable degree of rational understanding.[45]

I would also reaffirm the relevance of the *Wilson* factors to the determination of whether genuine amnesia may render a particular defendant incompetent—at least

---

defendant is oriented to time and place and has some recollection of events." 362 U.S. at 402, 80 S.Ct. 788 (internal quotation marks and parentheses omitted). By necessary implication, this means that competency must *include* the capacity to have "some recollection of events."

42. *See* Tex. Gov't Code (Code Construction Act) § 311.021(1) ("In enacting a statute, it is presumed that ... compliance with the constitutions of this state and the United States is intended[.]"). Because Article 46B.003 was enacted by the 78th Legislature, this provision of the Code Construction Act applies. *See Id.*, § 311.002(2) (Code Construction Act provisions apply to "each amendment, repeal, revision, and reenactment of a code or code provision by the 60th or a subsequent legislature").

43. *See* Tex.Code Crim. Proc. art. 46B.024(1)(B) ("During an examination under this subchapter and in any report based on that examination, an expert shall consider, in addition to other issues determined relevant by the expert, the following: (1) the capacity of the defendant during criminal proceedings to ... (B) disclose to counsel pertinent facts, events, and states of mind[.]").

44. *Id.*

45. This case does not present the question of the relevance of drug- or alcohol-induced amnesia to a defendant's competency to stand trial. *See* note 34, *ante*. Because of the ease with which amnesia may be feigned, one oft-cited and influential commentary has taken an understandably chary view of claims of incompetency due to amnesia caused by a defendant's voluntary consumption of drugs or alcohol. *See* Note, *Amnesia: A Case Study in the Limits of Particular Justice*, Yale L.J. 109 (1961). The notion seems to be that a defendant who voluntarily imbibes long enough or in sufficient quantity to impair his memory has, by this own conduct, essentially forfeited his right to participate in his defense against whatever culpable conduct he may have perpetrated while in that condition—not unlike the defendant who forfeits his right to be physically present at his own trial because of his incorrigibly contumacious behavior in the courtroom, under *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

to the extent they can be developed in a pre-trial context.[46] As in *Wilson,* this case involves "the unusual situation" in which accident-induced amnesia was all but conclusively established.[47] Of course, the failure to remember the offense itself, even from such an accident, will not render the appellant incompetent *per se.* But if that failure seriously impedes his ability to relate facts about the offense to counsel and, with the assistance of counsel, to a jury, that would significantly tend to exculpate him, reduce the level of his criminal culpability, or legally excuse his otherwise criminal conduct, then I believe he should be found incompetent to stand trial.

In making this determination on remand, the court of appeals should assess the weight of the evidence, as developed at the competency hearing, to show the following:

- The extent to which injury-induced amnesia affected the appellant's ability to consult with and assist his counsel (including the extent, if any, to which his inability to remember the accident might have impaired his counsel's ability to challenge the State's evidence and marshal evidence in the appellant's defense);

- the extent to which injury-induced amnesia affected the appellant's ability to testify and give his own version of the accident, including, obviously, an account of who was driving the boat;

- the extent to which the evidence could be extrinsically reconstructed, and the extent of the State's cooperation in that reconstruction;

- the strength of the State's case to establish any element of the crime to which the appellant's loss of memory could conceivably relate, under the particular circumstances of the case.

With respect to the last factor, I would offer three observations. First, if it is possible under the particular circumstances of the case that the facts as the appellant could remember them, but for his amnesia, would exculpate him, reduce his culpability, or excuse his conduct, then it must be presumed that he would remember them so, and the relative strength of the State's case must be assessed with that presumption in mind. Second, it is emphatically improper to declare the appellant competent simply because the State has legally sufficient evidence to support his conviction.[48] Third, while the ap-

---

**46.** I reiterate that, although the appellant asked the trial court to reconsider the issue of his competency to stand trial at the conclusion of the guilt phase of his trial, he did not challenge the trial court's ruling at that juncture as an independent point of error on appeal, and it is not before us on petition for discretionary review. *See* note 32, *ante.*

**47.** *Wilson v. United States, supra,* at 461. The State did not formally concede until its stipulation at trial that because of his head injury the appellant could not remember the accident. But nor did it refute the appellant's substantial evidence at the competency hearing that he suffered retrograde amnesia as a result of his injuries from the collision. *See* note 34, *ante.*

**48.** The court of appeals found it at least significant that the circumstantial evidence at trial "supported the jury's conclusion that" the appellant was driving the boat at the time of the accident. *Morris v. State, supra,* at 167–68. In the first place, we do not think the court of appeals should have considered the evidence adduced at trial in determining the rationality of the competency jury's verdict. *See* note 30, *ante.* Secondly, to the extent that the evidence at the competency hearing might show that the State could present legally *sufficient* evidence to support a verdict against the appellant, this does not demonstrate that he is competent to stand trial any more than the presentation of legally sufficient evidence will render constitutional error harmless beyond a reasonable doubt. *See Satterwhite v. Texas,* 486 U.S. 249, 258–

pellant's experts were apparently able to reconstruct the accident in an exculpatory light without his input,[49] this fact should not necessarily be enough to declare the appellant competent. If it is possible that, by his own description to his counsel, and by testimony before the fact-finder, the appellant could significantly enhance the expert opinion that he was not the one driving the boat, and thus further diminish the strength of the State's case with respect to that indispensable element of the offense, he may yet prove to be incompetent.[50]

The Court suggests that it is enough to establish an amnesiac defendant's competency that, despite the absence of any memory of the alleged offense, he retains an ability to present a "viable defense."[51] In my view, however, the question under the *Wilson* standard is not whether the defendant can put on a defense that is merely plausible, "viable," or even stout. Not even a stout defense assures the kind of fairness that due process contemplates when it prohibits putting an incompetent defendant to trial. Rather, the circumstances of the case must be such that the defendant's debility is *fully* compensated for—that is to say, the defendant can put

on as stout a defense as he would presumably be able to proffer were he able to remember the specifics of the alleged offense. That the appellant in this case was able to marshal a defense does not mean that the State's evidence was, in the words of *Wilson's* fifth factor, "such as to negate all reasonable hypotheses of innocence."[52] On the contrary, the fact that the defendant could marshal some semblance of a defense—even a fairly stout one—even in the absence of his own ability to remember, suggests to me that it would be manifestly unfair to put him to trial with less than all of the evidence we are constrained to presume could serve to convince a jury that he is innocent. Because if the defendant can marshal a plausible defense, even without remembering the event, it is doubtful that the State's case can be regarded as so compelling as to justify discounting the possibility that his memory could have made a difference to the outcome. To force such a defendant to stand trial anyway tolerates too great a risk of convicting an innocent man. That seems even less justifiable to me than trying a manifestly incompetent (because, *e.g.*, schizophrenic) defendant simply because there is no conceivable question as to his

59, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (error may be said to "contribute to the verdict" even if the State presents other evidence that is legally sufficient to establish guilt).

**49.** *See* note 35, *ante.*

**50.** Looking at the evidence that was developed at trial, the court of appeals found it significant that the appellant's experts were able "to reconstruct the accident and express opinions whether [the appellant] was driving immediately prior to the collision[,]" and that "the jury . . . heard substantial evidence regarding [the appellant's] contention that he was not driving at the time of the collision." *Morris v. State, supra,* at 168 & 169. First of all, I repeat that the court of appeals should not have been considering the evidence at trial in deciding whether the competency

jury's verdict was against the great weight and preponderance of the evidence. *See* note 30, *ante.* Second, even if the evidence at the competency hearing shows that the appellant would be able to offer "substantial evidence" that he was not driving the boat, this will not necessarily show him to be competent if, but for his accident-induced amnesia, he could offer significantly more extensive or persuasive evidence that he was not the one driving the boat. That this question is subject to expert debate suggests that the State's case is *not* so strong "as to negate all reasonable hypotheses of innocence." *Wilson v. United States, supra,* at 464.

**51.** Majority opinion, at 292.

**52.** *Wilson, supra,* at 464.

guilt—something the Due Process Clause of the Fourteenth Amendment would clearly prohibit.

## CONCLUSION

For these reasons, I would vacate the judgment of the court of appeals and remand the cause to that court for further consideration of the competency issue consistent with this opinion. Because the Court does not, I respectfully dissent.

KELLER, P.J., filed a concurring and dissenting opinion in which MEYERS, J., joined.

I do not believe that the competency statute has anything to do with amnesia. I would hold as a legal matter that amnesia with respect to an alleged crime does not render a defendant incompetent to stand trial. I would also hold that when a trial judge is authorized to run sentences concurrently or consecutively, but cumu-

lates ("stacks") the sentences in an unlawful manner, the remedy is to remand the case to the trial judge to reconsider the cumulation decision.

## A. Amnesia

The Court holds that amnesia does not render a person incompetent per se, and it further holds in this case that there was ample evidence to support the jury's finding that appellant was in fact competent to stand trial. The Court correctly rejects reliance upon the *Wilson*[1] factors, but I would go further and hold that the amnesia evidence did not raise an issue concerning appellant's competency, so a jury trial on his competency to stand trial was not even necessary.

I agree with those courts that have held that loss of memory, due to amnesia, with respect to the time period in which the alleged crime occurs does not render a person incompetent to stand trial.[2] As

1. *Wilson v. United States,* 391 F.2d 460 (D.C.Cir.1968); *see also Jackson v. State,* 548 S.W.2d 685 (Tex.Crim.App.1977).

2. *See Fajeriak v. State,* 520 P.2d 795, 802 (Alaska 1974)(quoting *United States v. Knohl,* 379 F.2d 427, 436 (2nd Cir.1967): "Where the defendant complains of nothing more than memory difficulties, there is an inadequate ground for holding an accused incompetent to stand trial."); *Rector v. State,* 277 Ark. 17, 18, 638 S.W.2d 672, 673 (1982)("[A]mnesia is not an adequate ground for holding a defendant incompetent to stand trial."); *People v. Jablonski,* 37 Cal.4th 774, 809, 38 Cal.Rptr.3d 98, 126, 126 P.3d 938, 962 (2006)("[M]emory impairment ... does not, standing alone, establish incompetency."); *Darby v. State,* 514 N.E.2d 1049, 1052 (Ind.1987)("Loss of memory is not a basis for determining a defendant is incapable of adequately assisting in her defense."); *Commonwealth v. Griffin,* 622 S.W.2d 214, 216 (Ky.1981)("[A]mnesia or poor recall of events surrounding the commission of crime" does not render a defendant incompetent to stand trial.); *Morrow v. State,* 293 Md. 247, 253, 443 A.2d 108, 112 (1982)(In rejecting the

case-by-case approach, the court explained that "amnesia, by itself, as to the events of the crime charged, does not justify a finding of incompetence."); *State v. Baumruk,* 280 S.W.3d 600, 608–09 (Mo.2009)("[A]mnesia does not bar prosecution of an otherwise competent defendant.... A lack of memory of the events surrounding the commission of a crime does not make an individual incompetent to stand trial for the crime."); *State v. Holtan,* 205 Neb. 314, 322, 287 N.W.2d 671, 676 (1980)("[T]he mere fact that the defendant maintains he does not recall committing the crime but with full faculty enters a plea does not impose upon the trial court an obligation or duty to require a competency hearing."); *State v. Kincaid,* 158 N.H. 90, 94, 960 A.2d 711, 714 (2008)(Regarding amnesia claim, "assum[ing] without deciding, that the defendant has no memory of the accident.... That claim alone, however, does not automatically raise a bona fide doubt triggering a due process right to a competency hearing."); *State v. Molnar,* 81 N.J. 475, 489 n. 5, 410 A.2d 37, 44 n. 5 (1980)(noting intermediate appellate court cases from New Jersey dealing with amnesia that have "accepted the

some courts have pointed out, "[E]veryone is amnesic to some degree":

> But we underline the obvious in declaring that amnesia is nothing more than a failure of memory concerning facts or events to which an individual has been exposed and that every individual's memory process is marked by some distortion which may occur at any point and as a result, no one's memory is in fact complete, even under ideal conditions.[3]

A person who suffers from amnesia about the time period during which the alleged crime occurred is really in no worse position than someone who was home alone, asleep in bed; someone whose memory was impaired because he was insane, intoxicated, or drugged; someone whose "mind went blank," who "blacked out" (from alcohol or drug intoxication or otherwise), or who was unconscious; someone whose memory was affected by panic during the incident; or someone whose memory has dimmed or been lost with the passage of time.[4] "[M]any defendants, especially innocent ones, must proceed with less than perfect knowledge as to the circumstances of the alleged crime, yet trials are not unfair for that reason alone."[5] Lack of memory about the alleged crime is a common occurrence in criminal cases:

> Inevitably in this jurisdiction and others persons will be charged with crimes for which they have no memory. The causes of their amnesia may vary from psychological or physical trauma to drug or alcohol-induced blackout.

\* \* \*

"For over 100 years, lack of memory in murder cases has been a common and frequent defense. Although the expressions differ, they all amount to the same thing. Cases abound with commonly

---

view that the mere inability to remember the crime does not affect capacity to stand trial"); *State v. Francabandera*, 33 N.Y.2d 429, 435–36, 354 N.Y.S.2d 609, 613–14, 310 N.E.2d 292, 295 (Ct.App.1974)(In rejecting amnesia as a basis for finding a defendant incompetent under New York statute, court explained that there was "no authority" that the statute "contemplates any situation other than defendant's mental imbalance at the time of trial."); *State v. Avery*, 315 N.C. 1, 12, 337 S.E.2d 786, 792 (1985)(quoting *State v. Willard*, 292 N.C. 567, 576, 234 S.E.2d 587, 593 (1977): "Obviously, if defendant is unable to recall the events of the crime, his available defenses may be limited. We do not believe this fact alone renders him incompetent to stand trial."); *State v. Brooks*, 25 Ohio St.3d 144, 151–52, 495 N.E.2d 407, 413 (1986) ("Assuming, *arguendo*, appellant does suffer from psychogenic amnesia, this fact alone would not render him incompetent to stand trial."); *Frederick v. State*, 2001 OK CR 34, 37, 37 P.3d 908, 924 (2001)("[T]he present inability to remember events surrounding the crime does not impair the defendant's rational thought process and therefore is not incompetence."); *State v. Peabody*, 611 A.2d 826, 832 (R.I.1992)(In response to amnesia claim:

"We shall not expand the meaning of [the Rhode Island competency statute] by holding that a defendant's ability to consult with and assist his lawyer also encompasses the ability to remember the circumstances out of which the criminal charges arose.")

**3.** *State v. McClendon*, 103 Ariz. 105, 107, 437 P.2d 421, 423 (1968)(quoting from 71 YALE LAW J. 109–11 (1961–62), quotation marks and italics omitted); *see also Morrow*, 293 Md. at 254, 443 A.2d at 112 ("as the passage of time erodes memory"); *Willard*, 292 N.C. at 577, 234 S.E.2d at 593.

**4.** *See Fajeriak*, 520 P.2d at 802 (quoting *United States v. Stevens*, 461 F.2d 317, 320 (7th Cir.1972)); *McClendon*, 103 Ariz. at 108, 437 P.2d at 424 (quoting *Commonwealth ex. rel. Cummins v. Price*, 421 Pa. 396, 406, 218 A.2d 758, 763 (1966)); *Morrow*, 293 Md. at 254, 443 A.2d at 112; *Avery*, 315 N.C. at 12, 337 S.E.2d at 792 (quoting *Willard*, 292 N.C. at 577, 234 S.E.2d at 593); *Peabody*, 611 A.2d at 832.

**5.** *Commonwealth v. Lombardi*, 378 Mass. 612, 616, 393 N.E.2d 346, 349 (1979).

used statements or testimony by a person accused of murder that 'I don't remember anything'; 'my mind went blank'; 'I blacked out'; 'I panicked and don't remember what I did or anything that happened.' "

\*     \*     \*

Our criminal codes have been born of the societal interest in apprehending and punishing those who are guilty of serious crimes. We do not wish to provide a means of evading trial to those who are charged with criminal activity but cannot recall such activity owing to fortuitous circumstances or otherwise.[6]

In order to be competent to stand trial, a defendant must have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him.[7] This standard does not require that the defendant possess all the knowledge that he would like to have, or even all the knowledge that an ordinary person in his position would have. As the Maryland Court of Appeals explained, "the understanding required is the nature of the charge, the facts required to be proved to

sustain the charge, and the consequences attending a conviction for having committed the charge."[8] A defendant must also be able to discuss tactical decisions with his attorney concerning the trial.[9] A defendant who has amnesia with respect to a limited period of time, and no other mental defects, can think rationally, and is therefore competent to stand trial.[10] Although such a defendant cannot assist counsel with his memory, there are many other ways he can assist counsel throughout the case.[11] And memory is "only one source of ascertaining the facts surrounding the event for which a crime is charged."[12]

Although a defendant's amnesia might, in a given case, be a symptom of some *other* mental defect that has been raised by the evidence that would render him incompetent to stand trial,[13] amnesia about the time period in which the crime occurred is not, in itself, a sign of incompetency. That is why the Supreme Court of Kentucky has concluded that a trial court's finding of fact that a defendant was incompetent due to amnesia was clearly erroneous,[14] why the Court of Appeals of Maryland has expressly rejected the "case-by-case" approach,[15] and why the Supreme

---

6. *Peabody*, 611 A.2d at 832 (in part, quoting *Price*, 421 Pa. at 401, 218 A.2d at 760).

7. TEX CODE CRIM. PROC art. 46B.003(a).

8. *Morrow*, 293 Md. at 255, 443 A.2d at 113.

9. *See Id.*, 293 Md. at 255–56, 443 A.2d at 113.

10. *Francabandera*, 33 N.Y.2d at 436, 354 N.Y.S.2d at 614, 310 N.E.2d at 295; *Frederick*, 2001 OK CR at 37, 37 P.3d at 924.

11. *McClendon*, 103 Ariz. at 109, 437 P.2d at 425; *Morrow*, 293 Md. at 255–56, 443 A.2d at 113; *Kincaid*, 158 N.H. at 94, 960 A.2d at 714; *Peabody*, 611 A.2d at 833.

12. *Griffin*, 622 S.W.2d at 217.

13. *See Jablonski*, 37 Cal.4th at 809, 38 Cal. Rptr.3d at 126, 126 P.3d at 962.

14. *See Griffin*, 622 S.W.2d at 216 ("[T]he finding and conclusion that Griffin did not have substantial capacity to participate rationally in his own defense is based upon Griffin's poor memory surrounding the time the offenses were committed. We are of the opinion that this finding of fact by the trial court is clearly erroneous, is not supported by substantial evidence, and is tantamount to a holding that amnesia or poor recall of events surrounding the commission of crime would render a defendant incompetent to stand trial. We have never adopted this criterion in this jurisdiction and are unwilling to do so now.").

15. *See Morrow*, 293 Md. at 253, 443 A.2d at 112 ("We decline to accept Morrow's invitation to follow a case-by-case approach.... It is our opinion that those courts which hold that amnesia, by itself, as to the events of the

Courts of Nebraska and New Hampshire have held that evidence of amnesia did not trigger a duty in the trial court to hold a competency hearing.[16] Like those courts, I would hold that appellant's amnesia regarding the time period during which the alleged crime occurred was not any evidence of incompetency to stand trial, and that a jury trial on incompetency was not even required.

## B. Stacking

I agree with the Court that an unlawful stacking order does not constitute "reversible error" under article 44.29(b) of Texas Code of Criminal Procedure.[17] The State is not entitled to a new punishment hearing.[18] But I disagree with the Court's conclusion that the proper remedy is to delete the offending portion of the cumulation order.

Sometimes, non-reversible error may be subject to an intermediate remedy: a remand, not for a new trial or punishment hearing, but for further proceedings of a more limited scope.[19] In *Barton v. State*, the trial judge was authorized to order restitution, but no factual basis was introduced in the record to support the amount of restitution.[20] We held that the court of appeals could not reverse and remand the case for a new punishment hearing, but it could and should abate the appeal and remand the case for a hearing limited to determining the appropriate amount of restitution.[21]

As in *Barton*, the present case offers the possibility of an intermediate remedy. The trial judge was not allowed to partially stack a sentence, but that error can be remedied by abating the appeal and remanding the case for the trial judge to reconsider the cumulation order. The trial judge could then decide whether to run the third sentence concurrently or consecutively with the other sentences. The abatement and remand remedy would leave intact the jury's assessment of 18-year sentences on each count. The State would not be given the opportunity, for example, to procure 20-year sentences against appellant.

The Court says that we cannot take advantage of an intermediate remedy because the trial court's order was "unlawful." In support of its holding, the Court relies upon *Beedy v. State*, where the Court held that the proper remedy in that case was to delete the cumulation order.[22] But *Beedy* is distinguishable because in that case, the trial judge had no authority to stack a deferred adjudication onto a sentence.[23] There were no other stacking options available to the trial judge. The only alternative to deleting the cumulation order was a remand for a new punishment hearing, which is what State requested in that case.[24] Because the improper cumulation order did not constitute reversible error, a new punishment hearing was not

crime charged, does not justify a finding of incompetence, represent the better reasoned approach, and we so hold.").

16. *See Holtan* and *Kincaid*, cited in this opinion, footnote 2.

17. *See Beedy v. State*, 250 S.W.3d 107, 110–13 (Tex.Crim.App.2008).

18. *See id.* at 109–13.

19. *See Barton v. State*, 21 S.W.3d 287 (Tex.Crim.App.2000)(restitution order).

20. *Id.* at 288.

21. *Id.* at 289–90.

22. *See Beedy*, 250 S.W.3d at 115.

23. *Id.* at 109.

24. *See id.*

authorized,[25] and the only available remedy was to delete the order. In *Beedy* the Court was not confronted with a situation in which the trial court was authorized to stack sentences but stacked them in an improper manner, nor was the Court confronted with a situation in which an intermediate, alternative remedy was possible. I believe the present case is more like *Barton*, where the trial judge was authorized to issue the type of order in question, but an error existed with respect to order's specific terms, and a remand for further proceedings of a limited scope can correct the error.

## C. Conclusion

I concur in the court's judgment with respect appellant's amnesia claim, but I dissent to the Court's judgment with respect to the stacking issue.