ACCEPTED
04-15-00018-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/7/2015 11:01:20 AM
KEITH HOTTLE
CLERK

## NO. 04-15-00018-CR

## IN THE COURT OF APPEALS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/7/2015 11:01:20 AM
KEITH E. HOTTLE
Clerk

## FOR THE

## FOURTH COURT OF APPEALS DISTRICT

## OF TEXAS

## SAN ANTONIO, TEXAS

**CHARLES ANTHONY LHERAULT,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

**Trial Cause No. 2013-CR-10281**
**Appeal from the 175th District Court**
**Bexar County, Texas**
**Hon. Mary Roman, Presiding**

## BRIEF FOR APPELLANT

|  |  |
|---|---|
|  | **MICHAEL D. ROBBINS** |
|  | **Assistant Public Defender** |
|  | **Paul Elizondo Tower** |
|  | **101 W. Nueva St., Suite 310** |
|  | **San Antonio, Texas 78205** |
| **ORAL ARGUMENT WAIVED** | **(210) 335-0701** |
|  | **FAX (210) 335-0707** |
|  | **Bar No. 16984600** |
|  | **mrobbins@bexar.org** |
|  |  |
|  | **ATTORNEY FOR** |
|  | **APPELLANT** |

i

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a) (West 2015), the parties to this suit are as follows:

(1)     **CHARLES ANTHONY LHERAULT**, TDCJ # 01972430, Garza West Transfer Facility, 4250 Highway 202, Beeville, Texas 78102, is the appellant and was the defendant in the trial court.

(2)     The **STATE OF TEXAS**, by and through the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205, is appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

(1)     Charles Anthony Lherault was represented in the competency hearings and trial by **LORAINE EFRON**, 10010 San Pedro, Suite 660, San Antonio, Texas 78216. She was assisted during the trial by **TRISHA MORALES PADILLA**, 315 Dwyer Ave., San Antonio, Texas 78204; and **ANDREW J. LAIRD**, 10004 Wurzbach Rd., Suite 300, San Antonio, Texas 78230.

(2)     The State of Texas was represented by **SUSAN D. REED** (since replaced by **NICHOLAS LAHOOD**), District Attorney, and **BRITTANY MITCHELL** and **ALESSANDRA CRANSHAW** (competency only), and **KARL ALEXANDER** and **SADE MICHELL** (trial only), Assistant District Attorneys, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205.

The appellate attorneys are as follows:

(1)     Charles Anthony Lherault is represented by **MICHAEL D. ROBBINS**, Assistant Public Defender, Paul Eilzondo Tower, 101 W. Nueva St., Suite 310, San Antonio, Texas 78205.

(2)     The State of Texas is represented by the **BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205.

The trial judges were: **HON. ANDREW CARRUTHERS** (competency), Criminal Law Magistrate's Court, Cadena-Reeves Justice Center, 300 Dolorosa St., 2nd Floor, San Antonio, Texas 78205; and **HON. MARY ROMAN** (trial on the merits), 375th District Court, Cadena-Reeves Justice Center, 300 Dolorosa St., 4th Floor, San Antonio, Texas 78205.

# Table of Contents

                                                                                           Page

Identity of Parties and Counsel .     .     .     .     .     .     .     .     ii

Table of Contents .     .     .     .     .     .     .     .     .     iv

Table of Authorities     .     .     .     .     .     .     .     .     v

A Note Regarding Record References .     .     .     .     .     .     vii

Statement Regarding Oral Argument .     .     .     .     .     .     vii

Word Count .     .     .     .     .     .     .     .     .     vii

Statement of the Case     .     .     .     .     .     .     .     .     1

Issue Presented     .     .     .     .     .     .     .     .     3

### Appellant's Point of Error
The jury's finding that Mr. Lherault was competent to stand trial was against the great weight and preponderance of the evidence. (RR 3 RP, 101).

Statement of Facts .     .     .     .     .     .     .     .     .     4

Summary of the Argument     .     .     .     .     .     .     .     12

Argument     .     .     .     .     .     .     .     .     13

       Appellant's Point of Error     .     .     .     .     .     .     13

Conclusion and Prayer     .     .     .     .     .     .     .     .     25

Certificate of Service     .     .     .     .     .     .     .     .     26

# Table of Authorities

Page

### Statutes

TEX. CODE CRIM. PROC. art. 29.08 (West 2006) . . . . . 24

TEX. CODE CRIM. PROC. art. 46B.003 (West 2006) . . . . . 19

TEX. CODE CRIM. PROC. art 46B.011 (West 2006) . . . . . 18

TEX. CODE CRIM. PROC. art. 46B.024 (West 2006) . . . . . 20

TEX. PENAL CODE § 22.01 (West 2011) . . . . . . 1

TEX. PENAL CODE § 25.11 (West 2011) . . . . . . 1

TEX. PENAL CODE § 31.171 (West 2011) . . . . . . 22

TEX. TRANSP. CODE § 541.201 (West 2011) . . . . . . 21

TEX. TRANSP. CODE § 546.005 (West 2011) . . . . . . 21

### Rules

TEX. R. APP. P. 9.4 (West 2015). . . . . . . . vii

TEX. R. APP. P. 38.1 (West 2015) . . . . . . . ii

TEX. R. APP. P. 44.2 (West 2015) . . . . . . . 24

### Cases

*Anderson v. State*, 301 S.W.3d 276 (Tex. Crim. App. 2010) . . . 24

*Brooks v. State*, 323 S.W.3d 823 (Tex. Crim. App. 2010) . . . . 19

*Cooper v. Oklahoma*, 517 U.S. 348 (1996) . . . . . . 24

*Meraz v. State*, 785 S.W.2d 146 (Tex. Crim. App. 1990) . . . .19,24

*Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014) . . . . 19

*Morales v. State*, 801 S.W.2d 624 (Tex. App. – Dallas 1990), *aff'd,* 830 S.W.2d 139 (Tex. Crim. App. 1992) . . . . . . . 11

*Morris v. State*, 301 S.W.3d 281 (Tex. Crim. App. 2009) . . . 19,20,23

*Seghelmeble v. State*, 390 S.W.3d 576 (Tex. App. – Dallas 2012, no pet.) . 19

*Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013) . . . 20,21,24

## A Note Regarding Record References

There are two independently-numbered sets of reporter's records in this appeal. Those volumes prepared by Roxanne Pena will be referenced thus: (RR 2 RP, ___). The volumes prepared by Delcine Benavides will be referenced thus: (RR 2 DB, ___). References to the clerk's record will be thus: (CR, ___).

## Statement Regarding Oral Argument

The issues raised in this appeal may be determined from the record and legal authorities alone. For that reason, the undersigned counsel does not request oral argument, but will present oral argument if it is requested by the State and granted by the Court.

## Word Count

Pursuant to TEX. R. APP. P. 9.4(i)(1) & (i)(2)(B) (West 2015), the word count, from the beginning of the Statement of Facts until, but excluding, the signature block, is 5,182. The total word count is 6,706. The Public Defender's Office uses Microsoft Word 2010.

TO THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS:

This brief is filed on behalf of Appellant, Charles Anthony Lherault, by Michael D. Robbins, Assistant Public Defender.

## Statement of the Case

Appellant Charles Anthony Lherault was charged by a two-count indictment with assault (family) by choking/strangulation,[1] and continuous violence against the family.[2] The indictment contained an enhancement allegation. (CR 12-13). Prior to trial on the merits, a jury was empaneled to determine competency, and the jury determined that Mr. Lherault was competent to stand trial. (CR, 60; RR 3 RP, 101). Subsequently, another jury was sworn to hear the case on the merits. (RR 2 DB, 183). Mr. Lherault pleaded not guilty. (RR 3 DBH, 14). Following the presentation of evidence and argument of counsel, the jury found Mr. Lherault guilty of assault (family) by choking/strangulation and continuous violence against the family, as charged in the indictment. (CR, 123-124; RR 4 DB, 95). Mr. Lherault elected that the jury assess punishment in case of conviction. (CR, 16). The jury found the enhancement allegations to be true, and assessed terms of 26 years and 10 years, with affirmative deadly weapon findings. (CR, 131-134; RR 5

---

[1] A felony of the second degree, in violation of TEX. PENAL CODE §§ 22.01(a) & (b-1) (West 2011).

[2] A felony of the third degree, in violation of TEX. PENAL CODE §§ 25.11(a) & (e) (West 2011).

DB, 103-104). The trial court sentenced Mr. Lherault accordingly. (CR, 136-139; RR 5 DB, 105). The trial court certified that Mr. Lherault has the right to appeal (CR, 135), and trial counsel timely filed notice of appeal (CR, 145), as did Mr. Lherault (CR, 155-257, 179-180).[3] This appeal follows.

---

[3] Trial counsel filed a motion for new trial, which was presented but not ruled on. (CR, 149-154).

## Issue Presented

## Appellant's Point of Error

The jury's finding that Mr. Lherault was competent to stand trial was against the great weight and preponderance of the evidence. (RR4 RP, 105).

## Statement of Facts[4]

This Statement of Facts section will concentrate on the alleged underlying offenses. The facts presented at the competency jury trial, prior to the trial on the merits, will be set forth in Appellant's Point of Error, below.

*A contentious relationship.*

**Greta Gutz** was the manager of a car wash in San Antonio. She first met Charles Lherault at the car wash. (RR 3 DB, 18). Mr. Lherault came over and started talking to Ms. Gutz, and they began dating right then. Mr. Lherault was working for a moving company. He moved into Ms. Gutz's house, although she did not invite him to move in. No one other than the two of them lived in the house. They had a good relationship at first. (RR 3 DB, 19). The relationship began going downhill after about six weeks. (RR 3 DB, 20).

Mr. Lherault began getting violent with Ms. Gutz. The physical violence began in July 2013. Ms. Gutz was on the front porch of her house. Mr. Lherault shoved her down on the steps of the house. She tried to get up, but he shoved her down repeatedly. He shoved her on her chest with his hands. (RR 3 DB, 20), Ms. Gutz did not call the police. A few days later,[5] she and Mr. Lherault were sitting on the couch talking. She had bruising on her chest. She told Mr. Lherault that here

---

[4] This Statement of Facts will summarize the evidence as presented at trial. Appellant does not concede the truth of the State's evidence.
[5] July 23, 2013. (RR 3 DB 25).

4

chest hurt as a result of the assault. (RR 3 DB. 21). Mr. Lherault got angry and began to choke Ms. Gutz. (RR 3 DB, 21-22). The choking lasted for about 30 seconds. He was on top of her. She was crammed into the corner of the couch. Mr. Lherault said, "Remember this. Remember this." The assault ended when Ms. Gutz went into the bedroom. (RR 3 DB, 22).

Mr. Lherault followed Ms. Gutz into the bedroom, hollering about something. Ms. Gutz was on the bed, and Mr. Lherault walked in and out of the room. (RR 3 DB, 22). He eventually ended up on the bed with her. He was above her, and she could not get him off. (RR 3 DB, 23). Ms. Gutz was taken to the hospital by ambulance that day. She was at the hospital for two hours, and went back home. She got back with Mr. Lherault after this incident, because she liked him and hoped that it would not recur. (RR 3 DB, 25). Despite Ms. Gutz's hopes, Mr. Lherault's temper increased. He angered more easily. Ms. Gutz asked him to leave, but he did not leave. (RR 3 DB, 26). Instead, Mr. Lherault accused Ms. Gutz of threatening him and his life. (RR 3, DB, 27).

The next incident occurred on September 23, 2013. On that day, Mr. Lherault did not want Ms. Gutz to leave to go to work, and they had an argument. They ended up in a pasture by her house. Mr. Lherault knocked her down and choked her. She got up several times, but he kept knocking her down, so she just stayed on the ground. Mr. Lherault started kicking her and telling her to get up.

Ms. Gutz was unable to breathe during the choking. (RR 3 DB, 27). When Ms. Gutz got up, Mr. Lherault would knock her down with his fist. She was eventually able to get away, and went into the bathroom, where she called the police. (RR3 DB, 28).

The arriving police officers called an ambulance. The paramedics looked at Ms. Gutz, but she refused transport to the hospital because she could not afford the medical expenses. (RR 3, DB, 29). All of the incidents occurred at 1328 Borgfeld, which is in Bexar County. (RR 3 DB, 32). Mr. Lherault asked Ms. Gutz to write a letter saying that it did not happen, and that the injuries were caused by her falling from a ladder. She refused. (RR 3 DB, 34).

Ms. Gutz said on cross-examination that she called the police on July 23, 2013, after the second incident. Mr. Lherault was arrested that day, but was soon released from the jail. Ms. Gutz went to the jail and picked him up. They resided together from July until September, although she left her house and slept elsewhere a few times during that period. (RR 3 DB, 37). She and Mr. Lherault had a sexual relationship which began right after they met. (RR 3 DB, 38-39). She did not try to end the sexual relationship, and she did not know whether he would have left her home if she had ended it. (RR 3 DB, 39). Ms. Gutz asked Mr. Lherault to leave her home "many times." (RR 3 DB, 40).

*The July 23 police and paramedic response.*

**Juan Aldaco** was a patrol deputy with the Bexar County Sheriff's Office ("BCSO"). (RR 3 DB, 50). On July 23, 2013, he was dispatched for a family disturbance to the address on Borgfeld. (RR 3 DB, 54). He and his backup officer heard a male voice saying something about waiting or officers, which they interpreted as a threat. (RR 3 DB, 55-56). The cover officer was Deputy Glaze, who came in a separate patrol car. (RR 3 DB, 56). It night time, and pitch black. The officers proceeded with caution to guard against a possible ambush. They first went to the back of the house. (RR 3 DB, 57). Not seeing any movement there, they went to the front. They could hear a male voice talking loudly and aggressively inside the house. (RR 3 DB, 58).

The deputies knocked on the door, but got no reply. The door was not locked. They identified themselves numerous times, and were loud, in order to advertise their presence, (RR 3 DB, 59). The male voice continued to speak loudly, Deputy Aldaco was not certain whether the male was even aware of their presence.[6] The deputies entered the house, and continued to announce themselves loudly. There was no one in any of the rooms other than the back bedroom, where the male voice originated. (RR 3 DB, 61-62).

---

[6] It should be noted that Mr. Lherault had hearing issues. *See* (RR 3 RP, 21).

Deputy Aldaco opened the door to the back bedroom. (RR 3 DB, 63). He saw Mr. Lherault on top of Ms. Gutz. He was using both hands to pin her down. (RR 3 DB, 64). Mr. Lherault was applying force to Ms. Gutz's upper arms. She was crying and appeared scared. (RR 3 DB, 66). Mr. Lherault immediately released Ms. Gutz, and Deputy Aldaco handcuffed Mr. Lherault. (RR 3 DB, 66-67). The deputy saw bruising on Ms. Gutz. He notified BCSO dispatch to call an ambulance. (RR 3 DB, 67-68). The paramedics took Ms. Gutz to the hospital. (RR 3 DB, 68). Deputy Aldaco arrested Mr. Lherault, (RR 3 DB, 69).

**Britnie Pace** was a paramedic for Acadian Ambulance. (RR 3 DB, 88). She was dispatched to the address on Borgfeld. (RR 3 DB, 89). Deputies directed her to Ms. Gutz. RR 3 DB, 91). Ms. Pace did an initial assessment by asking Ms. Gutz for a narrative history, for the purpose of medical treatment or diagnosis. Ms. Gutz said that he had been in a fight with her boyfriend. (RR 3 DB, 92). She was sitting on the edge of the bed crying. She said her boyfriend choked her and she was afraid. She said she had been unable to breathe for 10 or 15 seconds. (RR 3 DB, 93). Ms. Gutz had dark bruising on her chest area. There was also bruising on both arms, in various stages of healing. She had bruising on her left breast and red marks on her neck. She said she could not swallow properly. (RR 3 DB, 94).

There was petechiae from broken blood vessels underneath Ms. Gutz's eyes. (RR 3 DB, 96). He blood pressure was elevated, possibly the result of anxiety. (RR

3 DB, 98-99). Ms. Gutz's blood pressure went down after she calmed down. (RR 3 DB, 99). The ambulance brought Ms. Gutz to Stone Oak Methodist Hospital. (RR 3 DB, 100). Ms. Gutz said she had not been using drugs or alcohol, and she showed no signs of intoxication. (RR 3 DB, 111).

**Frank Stubbs** was a detective investigator with BCSO. (RR 3 DB, 120). He received a dispatch on this case, and met Deputy Aldaco at the hospital. (RR 3 DB, 121-122). He spoke with Ms. Gutz. He attempted to speak with Mr. Lehrault, who would not speak with him. (RR 3 DB, 123). Ms. Gutz was in the emergency room. She was very upset, too upset to give a written statement. She had multiple bruises. (RR 3 DB, 124). Detective Stubbs therefore took a video statement from Ms. Gutz. Her voice was very hoarse and soft. She had redness to the neck and petechiae around her eyes and face. (RR 3 DB, 125). The detective testified that hands may be considered deadly weapons. He referred this case to the District Attorney's Office. (RR 3 DB, 127).

*The September 23 police response.*

**F. Gonzalez** was a BCSO patrol officer on September 23, 2013. (RR 4 DB, 7). He was dispatched on that day to the Borgfeld address for an altercation in progress. He knocked on the door but did not hear anyone. He circled around the house and saw Ms. Gutz. (RR 4 DB, 9). The deputy made contact with her and Mr. Lherault. She was in panic mode. The deputy separated the parties. (RR 4 DB, 10).

Ms. Gutz said that Mr. Lherault assaulted her. He punched her several times. He knocked her to the ground and kicked her while she was down. She had dried blood on her mouth. Her clothing was dirty. She was covered with fresh mud. (RR 4 DB, 11). Ms. Gutz said that Mr. Lherault assaulted her throughout the morning. It started in the bedroom and continued outside the house. Mr. Lherault caught up with Ms. Gutz and knocked her to the ground and kicked her. She eventually stopped trying to get up. Mr. Lherault continued to assault her and yelled at her to get up. (RR 4 DB, 12). She said he grabbed her by the hair and told her to get up, and then knocked her to the ground. (RR 4 DB, 13). Mr. Lherault also choked her. (RR 4 DB, 13-14). The injuries appeared to be superficial and not severe. (RR 4 DB, 14).

**Manuel Alvarez**, a BCSO fingerprint examiner compared a known set of fingerprints of Mr. Lherault to a pen packet for his prior imprisonment. The prints matched. (RR 4 DB, 23-24).

*The verdict, punishment phase, and post-trial procedures.*

Following the reading of the charge and argument of counsel, the jury found Mr. Lherault guilty of assault to a family member by choking, and continuous violence against the family, as charged the indictment. (CR, 123-124; RR 4 DB, 94). Nothing in the punishment phase is relevant to this appeal. The jury returned verdicts of 26 and 10 years, respectively. (CR, 131-134; RR 5 DB, 103). The court

10

sentenced Mr. Lherault accordingly. (CR, 136-139; RR 5DB, 105). The court correctly certified that this was not a plea bargain case and that Mr. Lherault has the right to appeal. (CR, 135). Trial counsel and Mr. Lherault both timely filed notices of appeal. (CR, 145, 155-157, 179-180). The trial court appointed the Public Defender's Office to represent Mr. Lherault on appeal. (CR, 185). This appeal follows.

## Summary of the Argument

Mr. Lherault's attorney filed a motion suggesting incompetency to stand trial. In time, a jury was selected and a trial held. The jury found Appellant competent. Mr. Lherault did not trust his attorney, and did not communicate with her in any reasonable manner. He fixated on trivial minutia, such as the apparent fact that the police did not buckle his seat belt in the police car after his arrest. He abandoned his attorney in favor of a non-lawyer friend who inspired his literary talents in writing about a secret agent frog named Stumpy. Mr. Lherault lacked the capacity to communicate with his attorney in a rational manner. He was unable to assist in the preparation of his defense, and was therefore incompetent to stand trial.

## Argument

## Appellant's Point of Error (Restated)

The jury's finding that Mr. Lherault was competent to stand trial was against the great weight and preponderance of the evidence. (RR 3 RP, 101).

*The competency motions.*

The issue of Mr. Lherault's competency to stand trial was raised more than once prior to the trial on the merits. The motion for competency examination, which resulted in a jury trial, was filed on April 29, 2014, and was granted by the Criminal Law Magistrate. (CR, 53-55). On the same day, the District Judge referred the case to the Magistrate. (CR, 47). The Magistrate ordered a competency psychiatric evaluation on May 22, 2104. (CR, 56). A jury trial resulted in a finding of competency, which order is being appealed here. (CR, 60). Defense counsel filed two motions for further competency examination on November 18, 2014 (CR, 84-87; 96-98), the second of which was denied by the Magistrate. (CR, 98).

*The competency jury trial.*

On August 19, 2014, the case was called for a jury trialon competency in the Bexar County Criminal Law Magistrate's Court, Hon. Andrew W. Carruthers, presiding. (RR 1 RP, 1). Because of issues with the availability of witnesses, the actual trial proceeded with the State's witness going first (RR 2 RP, 5), but this brief will summarize the witness testimony in the proper order.

The first witness for the defense was **Jack Ferrell, Ph.D.**, a forensic psychologist. (RR 3 RP, 4). Dr. Ferrell interviewed Mr. Lherault at the jail, and monitored a lawyer-client visit. (RR 3 RP, 11). Mr. Lherault completed some written psychological testing submitted to him in advance, but he did not cooperate fully with Dr. Ferrell in person, because he felt that the testing would make it look like he was crazy, and he was not crazy. (RR 3 RP, 12-13). According to Dr. Ferrell, the testing was administered not so much to determine Mr. Lherault's capacity as it was to explain why Mr. Lherault would not demonstrate that capacity. (RR 3 RP, 14). Mr. Lherault understood that the testing was attempted at his attorney's request. (RR 3 RP, 14-15). He said that the testing was not what he wanted to do. Dr. Ferrell was concerned about what was causing Mr. Lherault to refuse to cooperate. (RR 3 RP, 15).

Dr. Ferrell first tried to establish rapport with Mr. Lherault and hear his story. Mr. Lherault knew what the doctor's role was. He said he was going to tell his story, although it was going to be unbelievable. (RR 3 RP, 16). Mr. Lherault said that he understood the charges. He had been studying the Penal Code and the evidentiary laws. He understood the potential consequences of the charges. (RR 3 RP, 17). The mental status exam was mostly within normal limits. (RR 3 RP, 18). Mr. Lhearult exhibited anxiety, which was normal in his situation. (RR 3 RP, 19).

He was narcissistic and self-involved, but not to extremes. There was some hypomanic behavior, but it was not out of control. (RR 3 RP, 35).

Mr. Lherault's narcissistic traits had an impact on his relationship with his attorney. (RR 3 RP, 22). He felt his attorney was doing a great job, but he did not trust her. He felt that she was not telling the truth. If he had to, he would fire her. Mr. Lherault was very intense about this, and Dr. Ferrell did not think he was malingering. (RR 3 RP, 23). Despite Mr. Lherault's understanding the process, Dr. Ferrell's concern was about his ability to effectively communicate with his attorney. (RR 3 RP, 24). When Mr. Lherault went down the wrong track, it was not possible to get him untracked. (RR 3 RP, 26). When he fixated on something, he did not pay attention to anything else. (RR 3 RP, 27). Mr. Lherault thought his attorney was lying to him. (RR 3 RP, 29).

Dr. Ferrell believed that Mr. Lherault had the capacity to satisfy most of the elements of competency (RR 3 RP, 32-34), but the doctor was concerned about Mr. Lherault's capacity to engage in a reasoned choice of legal strategies and options. (RR 3 RP, 34). Mr. Lherault had trust issues. He did not work well with his attorney because of his strong-willed and outspoken nature. (RR 3 RP, 35). Dr. Ferrell was concerned that Mr. Lherault lacked the ability to consult with his attorney with a rational degree of understanding. He lacked the capacity to do this under stress. (RR 3 RP, 37). After previously declining to state whether or not he

thought Mr. Lherault was incompetent (RR 3 RP, 25), Dr. Ferrell ultimately stated that Mr. Lherault was incompetent because he did not trust his attorney. (RR 3 RP, 45-46).

**Charles Lherault** also testified at the competency hearing. He did not think his attorney was listening to him. He believed her most of the time, but did not trust her. (RR 3 RP, 61). He did not like the way his case was being handled, and he was getting help from a non-lawyer, whom he refused to identify. (RR 3 RP, 63-64). Mr. Lherault felt that basic things were not being done in his legal battle. (RR 3 RP, 66). He felt he was arrested for a mistake of fact or mistake of law. (RR 3 RP, 67). He felt that his representation was better in his civil case in the 150th District Court.[7] (RR 3 RP, 68). Mr. Lherault felt that his attorney was hired by the courts, and that she did not want to anger the courts. (RR 3 RP, 69). His attorney would not answer common-sense questions.[8] (RR 3 RP, 70). His attorney would not file motions for him, and he knew that *pro se* motions were not effective. (RR 3 RP, 71). Mr. Lherault accused his lawyer of not following the law. (RR 3 RP, 72). He did not want another lawyer. He just wanted the trial judge to see his stuff. (RR 3 RP, 72). The main reason Mr. Lherault did not trust his lawyer was because he could not get his case to court. (RR 3 RP, 77).

---

[7] He apparently referenced *Greta Gutz v. Charles Lherault*, No. 2013-CI-19836, a protective order case.

[8] The record does not give a sample of the questions he asked his attorney, certainly because of lawyer-client privilege and the restriction against telling the competency jury the nature of the underlying case.

*The State's witness.*

**Brian P. Skop, M.D.** was a psychiatrist. (RR 2 RP, 7). He did competency evaluations as a consultant to the courts, not as a treating physician for the defendant. (RR 2 RP, 9). Dr. Skop's initial evaluation of Mr. Lherault was at the jail on June 20, 2014. (RR 2 RP, 11). He and Mr. Lherault were able to communicate. Mr. Lherault answered the questions appropriately, and his answers were "on target." Mr. Lherault reported no mental health history. (RR 2 RP, 12). Mr. Lherault did not appear to hallucinating, although he did get animated when he spoke. He expressed frustration with his situation. (RR 2 RP, 13). He would occasionally go on a diatribe when he discussed his legal situation. (RR 2 RP, 13-14). He had strong-headed ideas about how he wanted his case handled. (RR 2 RP, 14). He did not appear to be manic, however. (RR 2 RP, 15).

Mr. Lherault gave appropriate answers regarding the charges against him and the potential consequences. Dr. Skop felt that Mr. Lherault understood the charges. (RR 2 RP, 16). Mr. Lherault understood the facts of the case. He understood the plea bargaining process. (RR 2 RP, 17). He understood his right to remain silent. He knew what the roles of the various players in the trial. He was, however, frustrated because his attorney was not handling the case the way he wanted. (RR 2 RP, 18). His attorney was not following his wishes. Mr. Lherault

17

reported a history of substance abuse, but Dr. Skop did not believe that it affected his competency. (RR 2 RP, 19).

Dr. Skop's diagnosis was methamphetamine abuse and narcissistic personality traits. (RR 2 RP, 20). There was no indication of depression of schizophrenia. There were a few manic-like symptoms. Dr. Skop concluded that Mr. Lherault was competent to stand trial. Mr. Lherault's narcissistic traits were exemplified by the way he was over-insistent about the way his attorney was handling his case. (RR 2 RP, 21). Mr. Lherault believed that he knew so much he could outwit people. That belief negatively impacted his ability to consult with his attorney, but he did have the capacity to do so. (RR 2 RP, 21-22).

Following the reading of the charge and argument of counsel, the jury found that Mr. Lherault was competent to stand trial. (CR, 60; RR 3 RP, 101).

*Standard of review.*

The judgment declaring Mr. Lherault competent to stand trial was not directly appealable. It was ancillary to the main criminal case and became appealable only after the final convictions. *Morales v. State*, 801 S.W.2d 624, 625 (Tex. App. – Dallas 1990), *aff'd*, 830 S.W.2d 139 (Tex. Crim. App. 1992); TEX. CODE CRIM. PROC. art. 46B.011 (West 2006). Since Mr. Lherault had the burden of proof at the competency trial, the correct standard of review is whether, after considering all the relevant evidence, the judgment is so against the great weight

and preponderance of the evidence as to be manifestly unjust. *Morris v. State*, 301 S.W.3d 281, 292 n. 35 (Tex. Crim. App. 2009)(citing *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990)); *see Brooks v. State*, 323 S.W.3d 823, 924 (Tex. Crim. App. 2010)(Cochran, J., concurring).

This is a factual sufficiency standard. *Seghelmeble v. State*, 390 S.W.3d 576, 580 (Tex. App. – Dallas 2012, no pet.). Although criminal appeals generally are limited to legal sufficiency review, appellate review may be conducted on factual sufficiency where, as here, the underlying burden of proof was by a preponderance of the evidence. *See Moon v. State*, 451 S.W.3d 28, 46 (Tex. Crim. App. 2014). An appellate court measures the propriety of the competency verdict based on evidence before the jury at the time of the verdict. *Morris*, 301 S.W.3d at 291.

*Competence to stand trial – the general principles.*

A person is incompetent to stand trial if the person does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. Art. 46B.003(a) (West 2006). Competency is a question of fact to be determined by the jury. *Morris*, 301 S.W.3d at 287. A person is presumed to be competent unless the person proves s/he is incompetent by a preponderance of the evidence. *Id.* at 285. Evidence relevant to the issue of competence "includes whether the defendant can (1)

19

understand the charges against him and potential consequences of the pending criminal proceedings; (2) disclose to counsel personal facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify. *Id.* at 286 (citing TEX. CODE CRIM. PROC. art. 46B.024(1) (West 2006)).

*"I can't finish a sentence without a – I can't get my questions answered. Basic questions that normal responses and normal motions that were put in immediately with other attorneys. I've talked to thousands. I'm not kidding. Thousands of people about their cases. And I have no clue why I'm still here."*[9]

This appeal will focus on the third element stated in *Morris v. State*. As Dr. Ferrell stated on cross-examination, in the other particulars, he and Dr. Skop were in general agreement. (RR 3 RP, 39). However, the third element is as important as any of the others. A person whose mental condition is such that he lacks the capacity to consult with his counsel and assist in preparing his defense may not be subjected to trial. *Turner v. State*, 422 S.W.3d 676, 688-89 (Tex. Crim. App. 2013). Charles Lherault obviously lacked the capacity to consult with counsel. His mind was perpetually elsewhere.

The inability to communicate with counsel rendered him incompetent. A defendant must have both a rational understanding of the proceedings and the ability to consult with his lawyers with a reasonable degree of rational

---

[9] Testimony of Charles Lherault. (RR 3 RP, 63).

understanding. "Unless a criminal defendant satisfies both criteria, he is incompetent to stand trial." *Turner v. State*, 422 S.W.3d at 684 n. 11. In this case, it is manifest that Mr. Lherault did not have that ability.

Mr. Lherault obviously was not able to focus on what was important in his case. He obsessed on tangential issues. The police apparently failed to place a seat belt around Mr. Lherault when he was arrested and placed in a patrol car. (RR 3 RP, 78). A police car is classified as an authorized emergency vehicle. TEX. TRANSP. CODE §§ 541.201(1)(A) & (13-a) (West 2011). The operator of an authorized emergency vehicle has the duty to operate the vehicle with appropriate regard for the safety of all persons, and is not relieved from the consequences of his reckless disregard for the safety of others. TEX. TRANSP. CODE § 546.005 (West 2011). While this was undoubtedly a mistake on the part of the deputies, and one that might have had fatal consequences and subjected them to criminal liability,[10] the failure of the police to belt Mr. Lherault in was not a first degree felony (RR 3 RP, 78), and there is no indication that he suffered any injury.

Yet Mr. Lherault's obsession about this rendered him unable to consult with his attorney regarding his major felony case with a rational degree of understanding. His lengthy discourse to the jury, eventually interrupted by his attorney with a different question, proved this misdirection: "And I have a felony

---

[10] *C.f.*, the events in Baltimore in April 2015.

to report, which is 38.171 in the Texas Penal Code. It is my responsibility to report a felony or it's a class A misdemeanor on my – I can receive one. Well, I reported to my lawyer that this happened. She didn't want to hear it, okay?" (RR 3 RP, 78-79). Mr. Lherault's perspective about his future liberty was lost in a fog. He was concerned about the lack of a seatbelt, when he should have been concerned about defending his criminal case. Because he could not consult with his attorney, he was incompetent to stand trial.

Mr. Lherault was clear that he did not trust his lawyer: "I – put my trust in her and I lost it. And I – I had to go by other means. And I had no choice. And I prayed and I prayed. And it came in the form of a third party." The third party was not a lawyer, but "A person that's helping me with understanding why I am here and helping me to get through not to sign." (RR 3 RP, 63). We don't know much about the legal advisor, but it is obvious that she was of more assistance to Mr. Lherault's literary persona than his legal predicament: "And I write – I wrote – It started out that she likes frog legs. And now his name is Stumpy. He's a secret agent. There's all kinds of wild things; critters. And it's something to write a book. Now, it's gotten really good. I'm doing books. I'm doing poems …." (RR 3 RP, 75). This is what concerned Mr. Lherault while his criminal case was pending.

Although this brief has emphasized the more extreme examples of Mr. Lherault's inability to confer with counsel, the record is replete with examples of is

22

intransigence. Mr. Lherault thought he knew so much about the case that he could outwit people, presumably including his attorney. (RR 2 RP, 21-22). This is much more serious than the personality clash which Dr. Skop described. (RR 2 RP, 27). Mr. Lherault fixates on trivia and minutia, and it is impossible to re-direct his thought processes. (RR 3 RP, 26-27). When a defendant becomes so fixated on issues independent of the charges against him that he is unable to think straight, he loses the capacity to rationally interact with his lawyer. That is what happened to Mr. Lherault. He went down a side track at full speed, and derailed.

The great weight and preponderance of the evidence in this case demanded that Mr. Lherault be found incompetent to stand trial. This is clear when the relevant evidentiary factors are considered. *See Morris v. State,* 301 S.W.3d at 286. Although Mr. Lherault may have understood the charges against him and the potential consequences of the proceedings, according to both Dr. Ferrell and Dr. Skop, he was unable to communicate with his attorney, or absorb her communications with him, in a meaningful manner. The jury's verdict was against the great weight and preponderance of the evidence.

Defense counsel did not waive this issue at any time subsequent to the competency trial. Indeed, she filed a motion for further competency examination, on November 18, 2014, which was denied by the magistrate. (CR, 84-87, 96-98). She filed a motion for continuance on December 2, 2014, the day the trial began,

which referenced the same issues and the competency trial. (CR, 99-100). The trial court denied the motion. (RR 2 BD, 8). [11]

*Harm.*

"A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d at 688 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)). Therefore, Mr. Lherault's constitutional rights are implicated. This Honorable Court must reverse the judgment of conviction or punishment unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a) (West 2015). In this case, the error was that the jury found Mr. Lherault competent to stand trial when he was incompetent. This finding, of course, contributed to the ultimate conviction and punishment, because he would not have been tried at all at the time he was, had the jury properly found him to be incompetent. The jury's finding of competence to stand trial was manifestly unjust. The proper remedy is to reverse the conviction and remand for a new trial. *Meraz v. State*, 785 S.W.2d at 156.

---

[11] The motion did not conform to the requirements of TEX. CODE CRIM. PROC. art. 29.08 (West 2006) and thus did not preserve anything for appellate review. *Anderson v. State*, 301 S.W.3d 276, 278-79 (Tex. Crim. App. 2010). It was, however, evidence that the issue was not waived.

## Conclusion and Prayer

WHEREFORE, Appellant prays that this Honorable Court sustain his Points of Error, reverse the judgment of the trial court, and remand the case for a new trial.

Respectfully submitted,

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva St., Suite 310
San Antonio, Texas 78205
(210) 335-0701
FAX (201) 335-0707
mrobbins@bexar.org
Bar No. 16984600
ATTORNEY FOR APPELLANT

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the above and foregoing brief has been emailed to the Bexar County District Attorney's Office, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205, on May 7, 2015.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender